57 F.3d 1070 (Table)
**Unpublished Disposition**

**(Cite as: 57 F.3d 1070, 1995 WL 348041 (6th Cir.(Ky.)))**
<KeyCite History>
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Herbert REED; Bernice Oliver, Plaintiffs-Appellees,
v.
COUNTRY MISS, INC., d/b/a Glasgow Manufacturing Company, Defendant-Appellant.

Nos. 93-6370, 94-5005.

June 8, 1995.

On Appeal from the United States District Court for the Western District of Kentucky, No. 88-00006; Ronald E. Meredith, Chief Judge.

W.D.Ky.

REMANDED.

Before: KRUPANSKY, GUY and NORRIS, Circuit Judges.

OPINION

ALAN E. NORRIS, Circuit Judges.

**\*\*1** Plaintiffs-appellees, Herbert Reed and Bernice Oliver, obtained a judgment against defendant-appellant, Country Miss, Inc., on their claims of age discrimination in the termination of their employment. Defendant appeals the district court's decision to allow post-judgment interest to accrue at the rate provided by state law rather than at the federally established rate, and the district court's decision as to the amount of attorneys' fees to which plaintiffs are entitled. For the reasons that follow, we reverse and remand to the district court.

I. Background [FN1]

Plaintiffs filed complaints against defendant under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634. Invoking the district court's pendent jurisdiction, they also asserted state-law claims for breach of contract and infliction of emotional distress. After the district court dismissed the emotional distress claim, a jury returned verdicts for plaintiffs on the age discrimination and breach of contract claims. The district court entered judgment for plaintiffs. The judgment granted both plaintiffs compensation for lost back pay, lost front pay, and liquidated damages. The order entitled Oliver to $211,790 and Reed to $240,110.

The judgment order provided that interest would accrue on the judgment at the prevailing federal rate, established by 28 U.S.C. § 1961(a), of 4.55 percent. [FN2] Pursuant to Federal Rule of Civil Procedure 60, plaintiffs filed a motion to correct clerical error. Plaintiffs argued that the portion of the judgment attributable to back pay and front pay was actually a judgment on the state-law contract claim, and that post-judgment interest should therefore accrue at the twelve percent rate called for by Kentucky law. [FN3] The district court granted the motion and entered a corrected judgment. The corrected judgment altered only the rate of interest accrual. Under the corrected judgment, interest was to accrue at twelve percent on the portion of the awards attributable to front and back pay and at 4.55 percent on the portion of the awards attributable to liquidated damages.

Plaintiffs then filed an application for attorneys' fees. The district court, consistent with the magistrate judge's recommendation, granted plaintiffs' application in full.

Defendant appeals from the decision to use the twelve percent post-judgment interest rate and from the order granting plaintiffs' attorneys' fees application.

II. Choice of Rate for Post-Judgment Interest Accrual

Defendant contends that the district court erred in

allowing post-judgment interest to accrue as provided by Kentucky law, at twelve percent, on the portion of the damages attributable to front pay and back pay. Defendant argues that interest should have accrued on the entire judgment at the federal rate.

Although we have not previously explicitly said so, we review the district court's decision on this issue *de novo*. [FN4] The choice between two potentially applicable interest rates is a purely legal question, and we review the determination of such questions *de novo*. *E.g., Loudermill v. Cleveland Bd. of Educ.,* 844 F.2d 304, 308 (6th Cir.), *cert. denied,* 488 U.S. 946 (1988). Furthermore, we have, in addressing similar issues, *sub silentio* performed a *de novo* review. *See, e.g., Bailey v. Chattem, Inc.,* 838 F.2d 149, 151-53 (6th Cir.), *cert. denied,* 486 U.S. 1059 (1988). Finally, other circuits have expressly held that district court decisions on analogous issues are reviewed *de novo*. *E.g., Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1298 n. 24 (9th Cir.1984) (noting that *de novo* review is appropriate when the case requires "interpretation of ... 28 U.S.C. § 1961"), *cert. denied,* 469 U.S. 1190 (1984).

**2** We agree with defendant that federal courts exercising supplemental jurisdiction over state-law claims should apply the rate derived from § 1961(a) to money judgments rendered for those state-law claims. The plain language of § 1961(a) compels this result. The statute states, "Interest shall be allowed on *any money judgment* in a civil case recovered in a district court.... Such interest *shall be calculated* [by a designated formula]...." 28 U.S.C. § 1961(a) (emphasis added). We decline to engage in the verbal gymnastics necessary to render § 1961(a) inapplicable to judgments for state-law claims entertained by a federal court.

In further support of our holding, we note that we have reached the same conclusion in the closely analogous diversity context. Federal courts exercising diversity jurisdiction apply state substantive law but apply the post-judgment interest rate established in § 1961(a). *Chattem,* 838 F.2d at 152. In fact, in *Compressed Gas Corp., Inc., v. United States Steel Corp.,* 857 F.2d 346, 353 (6th Cir.1988), *cert. denied,* 490 U.S. 1006 (1989), a diversity case involving only state-law claims, we held that, although Kentucky law governed substantive issues, § 1961(a) governed the accrual of post-judgment interest. With respect to § 1961(a), there is no meaningful distinction between a judgment on a state law claim heard pursuant to supplemental jurisdiction and a judgment on a state-law claim heard pursuant to diversity jurisdiction.

Section 1961(a) governs the accrual of post-judgment interest for state-law claims heard under a federal district court's supplemental jurisdiction. The district court erred in ruling otherwise, and we therefore reverse and remand in order that the district court may revise the judgment to comply with our holding.

III. District Court Jurisdiction to Award Attorneys' Fees

Defendant next argues that its filing of its notice of appeal after the entry of judgment against it divested the district court of jurisdiction to award attorneys' fees.

The timely filing of a notice of appeal divests a district court of jurisdiction over a case, except as to matters collateral to the main cause of action. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). Defendant argues that, because the statute governing attorneys' fees in this case, 29 U.S.C. § 216(b), makes attorneys' fees to the prevailing party mandatory, attorneys' fees are properly viewed as a part of damages and thus as integral--not collateral--to an ADEA claim. Defendant contends that its filing of its notice of appeal therefore stripped the district court of jurisdiction to award attorneys' fees.

The Supreme Court, however, has held that attorneys' fees are always collateral to the main cause of action. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202-03 (1988). [FN5] In *Budinich,* the court expressly ruled that attorneys' fees are collateral to the main cause of action even when the statute creating the cause of action makes the award of attorneys' fees mandatory. *Id.* at 202-03.

IV. Amount of Attorneys' Fees

**3** According to defendant, the district court granted excessive attorneys' fees. This court reviews decisions regarding the amount of attorneys' fees for abuse of discretion. *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 909 (6th Cir.1991). However, before we may overturn the district court's determination of factual issues relating to the fee award, we must be able to say that those factual findings are clearly erroneous. *Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1176 (6th Cir.1990). This deferential review is "appropriate in view of the district court's

superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

Defendant attacks the fee award on several grounds. First, it contends that the fee compensated plaintiffs' attorneys for much of their work on plaintiffs' unsuccessful claim for the Kentucky tort of infliction of emotional distress. In *Hensley,* the Supreme Court stated that, under statutory provisions which, like § 216(b), limit fee awards to prevailing parties, "no fee may be awarded for services on [an] unsuccessful claim." 461 U.S. at 435. The Court acknowledged, though, that when a plaintiff prevails on some claims but not on others, "there is no precise rule or formula" for determining the degree to which a fee award should be reduced. *Id.* at 436. Thus, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

Here, the district court reduced plaintiffs' fee award by the number of hours the attorneys claimed to have worked on matters relating solely to the emotional distress claim. A review of the computer printout detailing all the hours worked on this case reveals that plaintiffs' attorneys struck by hand the entries that they felt pertained to the infliction of emotional distress claim. These stricken entries totalled, however, only 19.5 of the roughly 1,100 hours spent working on plaintiffs' cases.

This reduction seems patently insufficient given that the infliction of emotional distress claim was one of only three claims presented by plaintiffs, and that the directed verdict was not granted until after plaintiffs introduced extensive trial testimony in support of the claim. Plaintiffs contend in response that much of the time spent on the emotional distress claim also furthered their trial presentation on the issue of mitigation of damages, which defendant raised and which is relevant to plaintiffs' successful ADEA claims. But it defies common sense to suggest that, had plaintiffs not brought the emotional distress claim, the attorneys would have worked only 19.5 fewer hours on plaintiffs' cases.

We therefore conclude that the fee award must be reduced. Since the hourly approach has been tried and found unworkable here, a simple percentage reduction is appropriate. In many such cases, we would simply reduce the award by an amount proportionate to the number of plaintiffs' unsuccessful claims. *See Scales,* 925 F.2d at 910 (reducing fee award by fifty percent when plaintiff prevailed on only two of four claims). But since much of the work on the emotional distress claim also furthered trial presentation on an issue relevant to plaintiffs' ADEA claims, we think the award should be reduced by one-half the usual amount, *i.e.,* by one-sixth instead of by one-third. To determine the proper fee amount, then, it will be necessary to add the stricken 19.5 hours to the total hours already approved, and then reduce by one-sixth the "gross" fee amount yielded by the new total of hours. Because the various attorneys who worked on the case have different hourly rates, the "gross" fee amount cannot be exactly determined until the 19.5 hours are assigned to the attorneys who worked them. We therefore leave the calculation of the modified fee award to the district court.

**\*\*4** Defendant next argues that the attorneys billed an excessive number of hours. In particular, defendant asserts that the attorneys spent too much time in conferences, and that they improperly billed time they spent reviewing and organizing the case file and leaving phone messages. We reject this contention. It is true that attorney conferences made up almost ten percent of the time billed; but, having reviewed the printouts, we see no reason to conclude that the district court abused its discretion when it concluded that these billings were reasonable. The same is true for the file work and phone messages, which totalled about ten hours over a five-year period.

Defendant further contends that the time log entries lack sufficient detail. Attorneys who seek a fee award must "maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." *Wooldridge,* 898 F.2d at 1177. Having reviewed the printouts, we conclude that they meet this standard. They are on the whole quite detailed. Representative entries include 0.3 hours for "conference with [another attorney in the firm] re motions in limine and responses," and 1.2 hours for "research for reply memo re motion to file second amended complaint." Such entries are clearly distinguishable from the "general services" entries that we criticized in *Wooldridge.* 898 F.2d at 1176. Defendant nevertheless complains about a number of entries that mention "research" without disclosing the topic researched. A review of the other items listed in these entries, however, makes the topics researched reasonably apparent. Defendant also complains that certain entries intermingle the travel time with other

tasks. That intermingling, however, did not make it impossible for the district court to determine the time spent on the other tasks; the travel was between a Bowling Green, Kentucky, office and either the courthouse or Glasgow, Kentucky. The district court presumably knew how long it took to traverse those distances. Defendant's contention regarding the specificity of the time charges is without merit.

Defendant finally argues that insufficient evidence supported the district court's determination of the hourly rates. Plaintiffs' lead counsel, whose work accounted for the lion's share of the hours billed, and who has well over twenty years' experience litigating cases in federal court, was assigned a rate of $125 per hour. Other attorneys on the team were assigned rates from $75 to $125 per hour, depending upon their experience.

In *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984), the Supreme Court stated, "To inform and assist the [district] court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Here, three disinterested attorneys submitted affidavits stating that plaintiffs' attorneys "had experience in litigation in the United States District Court for the Western District of Kentucky and the law of employment discrimination[,]" and attesting that the rates awarded by the district court conformed with community standards. Plaintiffs also note that the rates awarded are the same rates charged clients who retain the attorneys for products liability defense work. In view of this evidence, the facial reasonableness of the rates awarded, and the district and magistrate judges' familiarity with the norms of the legal community in the area over which they preside, we cannot conclude that the district court abused its discretion in establishing the rate at which to calculate the fee award.

V. Conclusion

**\*\*5** For the reasons stated, we remand so that the district court may enter a judgment that conforms with this opinion.

> FN1. The facts underlying plaintiffs' claims and the procedural history of this case are summarized in our opinion in Case Numbers 93- 5594/93-5659.
>
> FN2. Section 1961(a) provides a formula from which the post- judgment interest rate is derived. The formula is tied to the price of United States Treasury bills and therefore varies over time. In this case, the formula provided a 4.55 percent rate.
>
> FN3. Ky.Rev.Stat.Ann. § 360.040.
>
> FN4. In contrast, we review pre-judgment interest awards for abuse of discretion only. *E.g., Anderson v. Whittaker Corp.,* 894 F.2d 804, 809 (6th Cir.1990).
>
> FN5. *Budinich* was the culmination of a series of cases that foreshadowed the result reached there. In *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451 (1982), the Court, in holding that a motion for attorneys' fees is not subject to the ten-day timeliness standard for Rule 59 motions to alter or amend a judgment, stated, "a request for attorneys' fees under § 1988 raises legal issues collateral to the main cause of action...." In *Buchanan v. Stanships, Inc.,* 485 U.S. 265, 267-68 (1988), the Court held that a motion for costs is not a motion to alter or amend a judgment and therefore does not render ineffective a notice of appeal filed prior to the disposition of the motion. In so holding, the Court stated, "a request for costs [including attorney's fees] raises issues wholly collateral to the judgment in the main cause of action...." *Id.* at 268.

57 F.3d 1070 (Table), 1995 WL 348041 (6th Cir.(Ky.)), Unpublished Disposition

END OF DOCUMENT