IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WOMEN'S MEDICAL PROFESSIONAL CORPORATION, et al., | : : : |
| Plaintiffs, | : Case No. 2:03cv162 : |
| v. | : JUDGE ALGENON L. MARBLEY : |
| J. NICK BAIRD, M.D., | : Magistrate Judge Kemp : : |
| Defendant. | : |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This case is before the Court on Plaintiffs' Motion for Interim Attorneys' Fees and Expenses ("Motion for Fees") and Defendant Baird's ("Defendant" or "Baird") Motion to Defer Ruling thereon.  For the reasons set forth below, the Court **DENIES** Defendant's Motion to Defer Ruling, **GRANTS** the Plaintiffs' Motion, and **ORDERS** the Defendant to pay the Plaintiff's attorney's fees and litigation expenses in the amount of **$147,617.66**.

**II. FACTUAL & PROCEDURAL BACKGROUND**

After a trial on the merits, the Court issued an Opinion and Order on August 15, 2003, granting Plaintiffs' request for injunctive relief and permanently enjoining Defendant.  The Court amended its judgment on August 22, 2003 ("Amended Order").  Plaintiffs filed their Motion for Interim Attorneys' Fees and Expenses, along with several supporting affidavits, on August 29, 2003. Defendant filed his notice of appeal to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") on September 11, 2003,  and filed his Motion to Defer Ruling on Plaintiffs' Motion for Fees September 16, 2003.

### III.  ANALYSIS

#### A.  Plaintiffs' Motion for Fees

Pursuant to 42 U.S.C § 2000(e)-5(k) and 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988; 42 U.S.C § 2000(e)-5(k).  *See also, Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).  A prevailing party is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation marks and citation omitted).  "'A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the plaintiffs.'"  *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).  According to the Supreme Court, "a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley*, 461 U.S. at 429 (quotation marks and citation omitted).  Defendant has not argued any "special circumstances," so Plaintiffs', as prevailing parties, are entitled to recover their fees and costs incurred thus far in this litigation.

Plaintiffs submitted their Motion for Fees, along with supporting documentation and affidavits by counsel regarding their expended hours and related expenses.  Defendant protests that several of the hours are vague, duplicative, redundant or full of discrepancies, such that those specific requests should be denied if the Court chooses to award fees, at all.

**Reasonable Attorney's Fees Under the Lodestar**

A reasonable fee is one that is adequate to attract competent counsel but does not produce a windfall to the attorney.  *See Blum v. Stenson*, 465 U.S. 886, 897 (1984).  In calculating a

statutory award of attorney's fees, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The result of this calculation is called the lodestar. The lodestar method is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### a. Reasonable Hourly Rate

Defendant disputes that Al Gerhardstein ("Gerhardstein") and David Greer ("Greer") are entitled to an hourly rate of $350 and that Jennifer Branch ("Branch") is entitled to $250/hour. According to Defendant, "[t]here is no question that 'competent and experienced lawyers' could have been retained for less than [the amounts requested by Plaintiffs]." Plaintiffs defend that Baird has offered no evidence to rebut the evidence they offered in support of their Motion for Fees, which included affidavits from all attorneys regarding their educational backgrounds, civil rights' litigation experience and impressive credentials. In addition, Plaintiffs submitted affidavits from two third parties, Messrs. Newman and Marshall, who attest that the rates charged by Gerhardstein and Branch are reasonable in light of the market rates three years ago and reasonable in light of these attorneys' backgrounds and experiences. Therefore, Plaintiffs argue, there is sufficient evidence for this Court to find those hourly rates are reasonable.

The Court has broad discretion in determining what constitutes a reasonable hourly rate for an attorney. *Hudson v. Reno*, 130 F.3d 1193, (6th Cir. 1997) (citing *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994)). In exercising its discretion, the Court should consider the fair market value of the services rendered by the attorney. *Northcross v. Bd. of Educ. of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979); *see also Blum*, 465 U.S. at 895. "In most communities, the marketplace has set a value for the services of attorneys, and the

hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Id.* "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 896 n.11.

Attached to the Motion for Fees, Gerhardstein and Branch filed declarations in support of their $350 and $250 hourly fees.[1] Gerhardstein states that his primary focus over the last 26 years of practice has been in the area of civil rights, and he has litigated over 45 "significant civil rights" cases. He frequently presents seminars in civil rights and employment law and has authored several publications in these areas. Mr. Newman's affidavit, moreover, provides a sampling of the prevailing rates charged by other attorneys in October of 2000, with experience similar to Gerhardstein, and those rates varied from $285/hour to $435/hour.

Based upon this evidence, the Court finds Gerhardstein's requested hourly rate of $350 in this case is reasonable. *See*, *e.g.*, *Glover v. Johnson*, 934 F.2d 703, 716-17 (6th Cir. 1991) (upholding district court's determination of reasonable rate over defendant's objection on appeal based, in part, on third-party affidavits establishing the prevailing market rate).

Regarding Greer, he has been admitted to practice in the federal courts of Ohio since 1963, and his Curriculm Vitae is impressive, listing several professional association memberships and extensive experience in civil jury cases. However, unlike the support offered to justify Gerhardstein's $350 hourly rate, neither Mr. Newman's nor Mr. Marshall's affidavits

---

[1] Plaintiffs filed a similar affidavit by Greer on September 7, 2003.

comment on the reasonableness of that $350 rate for someone with Greer's skill and experience. In his affidavit, Greer lists only two "significant civil rights cases" that he has litigated, in contrast to the 45 cited by Gerhardstein.

Consequently, based upon Greer's training, background and experience and the evidence offered in support of his rate, the Court determines $300/hour to be a reasonable rate for Greer's services in this case.

Branch, on the other hand, requests an hourly rate of $250. Since receiving her license in 1987, her practice focus has been in civil rights and poverty law litigation. She has litigated over 20 significant cases in these areas and has been awarded fees at $200/hour for work performed in 2001. In his affidavit, Mr. Marshall states that $250.00 per hour for someone of Branch's caliber "is equal to or less than the market rate for attorneys of [her] background, skill and experience, in Columbus, Ohio."

Based upon this evidence, the Court finds Branch's requested rate is reasonable. Thus, her reasonable hours in this case will be multiplied by $250 pursuant to the loadstar determination.

Finally, although Defendant argues that "there is no question that competent and experienced lawyers could have been retained for less" in this matter, he fails to offer any evidence to refute the testimony of Mr. Marshall that, based on Mr. Marshall's extensive experience and knowledge of these kinds of cases, the number of attorneys willing and able to take them on a contingency basis is extremely small. Hence, the hourly rates decided by this Court above were "necessary to encourage competent lawyers to undertake the representation in question." *Tinch v. Dayton*, 199 F.Supp.2d 758, 765 (S.D. Ohio 2002) (citing *Coutler v. TN*, 806

5

F.2d 146, 149 (6th Cir. 1986)).

### b. Reasonable Hours

With respect to the number of hours expended, the prevailing party must establish that those hours were "reasonably expended." *See Hensley*, 461 U.S. at 434. The standard for assessing "reasonableness" is "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). The court may exclude from the lodestar calculation excessive, redundant and unnecessary hours and hours that lack proper documentation. *Hensley*, 461 U.S. at 434; *see also*, *UAW Local 540 v. Baretz*, 159 F.Supp. 2d 954, 957 (E.D. Mich. 2000) ("[f]ee applicants must exclude 'excessive redundant or otherwise unnecessary hours which are hours that would be unreasonable to bill a client and therefore to one's adversary irrespective of the skill, reputation or experience [of the applicant].'" (citing *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)).

Defendant avers that approximately 70% of the hours and records submitted by Plaintiffs are either "vague, duplicative, redundant, or full of discrepancies" such that the Court should find them unreasonable. One of Defendant's first arguments is that the Court should deny requests for paralegal and law clerk fees because these "anonymous individuals" did not submit their own affidavits attesting that their time entries were accurate and truthful. Baird cites to no case or court that has required such supporting documentation by paralegals and law clerks, and this Court is not aware of any such authority. *See*, *e.g.*, *Cleveland Area Board of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1020 n.4 (N.D. Ohio 1997) (stating, "[i]t is beyond dispute that a

reasonable attorney's fee includes compensation for the work of paralegals," and rejecting defendant's claim that paralegal time is limited to the amount actually paid to the paralegal, instead finding all plaintiffs had to provide in support of fees was evidence of the market rate for paralegals, assuming it was the practice to bill paralegal time separately from attorney time); *Tinch*, 199 F.Supp. 2d at 762 n.3 (in support of request for fees, court preferred plaintiffs' motions attesting to paralegal's fees to the paralegal's own, unsigned affidavit in deciding compensable hours performed by paralegal). The affidavits of Gerhardstein and Greer attest that their paralegal and law clerks' entries were accurate, and that is sufficient evidence.

Defendant argues, next, that several of the billing entries submitted by Plaintiffs are too vague to assess their reasonableness; and, consequently, the Plaintiffs should be denied fees for these vague entries. According to the Sixth Circuit, the documentation supporting a request for fees "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495, 502 n. 2 (6th Cir. 1984).

Upon review of the documentation offered by Plaintiffs and Defendant's objections thereto, the Court agrees with Baird as to four of the entries he contests: Greer's 02/09/03 and 04/23/03 entries; Gerhardstein's 02/11/03 entry and Branch's 05/29/03 entry. All of these entries are so vague that the Court cannot assess their reasonableness. Statements such as "Review background information and issues"[2] and "General Issues–trial prep"[3] are too broad and

---

[2] Greer's 02/09/03 entry.

[3] Gerhardstein's 02/11/03 entry.

unspecific to enable this Court to determine with a "high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id.*; *see also, Cleveland Area Board of Realtors*, 965 F.Supp. at1021 ("[a]lthough counsel is not expected to record in great detail how each minute of the day is spent, the general subject matter should be identified."). Therefore, 0.4 hours will be deducted from Plaintiffs' hours' request as to Greer; 2.00 hours as to Branch;[4] and 2.10 hours as to Gerhardstein.

Defendant further objects to 2.50 hours that Greer billed on March 1, 2003, allegedly in preparation for the February 12, 2003 preliminary injunction hearing, which never took place because Defendant's Motion to Transfer Venue was granted. It is incomprehensible why Greer would be preparing a month later for a hearing that, in fact, never took place a month earlier. Thus, 2.50 hours of Greer's time will be deducted from Plaintiffs' request for fees. As for the remainder of the entries to which Defendant objects, they are not so vague that this Court is unable to conclude that they were very likely spent on this litigation, and, realistically, many of the entries could not be more specific without the potential for a breach of the attorney-client privilege. Thus, the remainder of Defendant's objections regarding vague entries is not well-taken, and those objections are overruled.

Defendant also argues several entries evince duplicative or unnecessary fees, such that they, too, should be disallowed. Baird posits that the time Branch billed for traveling to and

---

[4]There are other objections regarding several of Branch's entries upon which this Court would agree with Defendant except that Branch filed a supplemental affidavit explaining those entries on September 30, 2003. As to the entries in that affidavit, the Court finds them to be reasonable upon the explanation provided in the supplemental affidavit. However, the 05/29/03 entry of "General Issues–depo prep and trial prep" was not explained more fully in Branch's supplemental affidavit; hence, Plaintiffs' request for those 2.00 hours is denied.

from and preparing for the preliminary injunction hearing scheduled for February 12, 2003, should be denied. Those hours are unnecessary, Defendant claims, because the court never heard arguments regarding the preliminary injunction. After the court granted Defendant's Motion to Transfer Venue the preliminary injunction issue was never decided by that court because venue was deemed improper. Moreover, Defendant points out, Branch did not argue against its Motion to Transfer Venue; rather, Gerhardstein, alone, did. Hence, Defendant believes Plaintiffs should not recover fees for hours Branch spent in preparation for an argument she never made, in a hearing in which she, ultimately, did not participate.

Under the *Wooldridge* standard for assessing " reasonableness," hours are "reasonable" if "a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." 898 F.2d at 1177. As for Branch's 2.00 hour travel time to and from the February 12, 2003 hearing, there was no way for her to know how the court was going to rule on Defendant's Motion to Transfer Venue. The court was going to hear the issue regarding venue first; but, depending on its ruling thereon, the court may have proceeded to hear arguments regarding the preliminary injunction. Had the court denied Defendant's Motion to Transfer Venue, Branch had to be present and prepared to argue the issues relevant to the preliminary injunction. Thus, this Court cannot find that Branch's travel time on February 12, 2003 was unreasonable.

However, once there, after the court's ruling on the Motion to Transfer Venue, Branch's presence, essentially, was unnecessary. She did not have to argue for a preliminary injunction against Defendant, and only Gerhardstein argued against the motion upon which the court ruled that day. Under those circumstances, it would be unreasonable for Branch to bill a client for

merely attending and observing a hearing. *See*, *Hensley*, 461 U.S. at 434 ("[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (citation omitted). Hence, Defendant's objection is well-taken here and Plaintiffs' request as to Branch will be reduced for the 1.80 hours of "Trial/hearing attend PI hearing" she billed on 02/12/03.

Baird further contests the billings by attorneys Gerhardstein and Branch for time related to preparation for and observation of depositions that they neither conducted nor defended. Plaintiffs argue that due to the expedited timing of this case, it was important for both attorneys to be present at the depositions because fact gathering was being conducted simultaneously.

In *Jones v. Federated Dept. Stores, Inc.*, the court found that it was not unreasonable for the plaintiff to have two attorneys present at depositions. 527 F.Supp. 912, 920 (D.C.Ohio, 1981) (denying defendant's claim of duplication). This Court agrees. Furthermore, as the *Jones'* court acknowledged, Baird's argument that it was unnecessary for Plaintiffs to have two attorneys present is unpersuasive because Baird, himself, had two attorneys and General Counsel Jodi Govern present at the depositions on his behalf.

Some of the "deposition" time Defendant contests involves travel time to and from depositions that Gerhardstein and Branch used to strategize about this litigation. *See*, *e.g.*, Branch's 05/27/03 entry. Besides the reasonableness of billing for travel time, in general, the Sixth Circuit specifically approves of fee requests for time attorneys spend "conferring with each other," and has rejected the argument that such consultation automatically amounts to duplication. *Glover*, 138 F.3d at 252-53. Here, it was efficient for Branch and Gerhardstein to use their travel time to strategize. Undeniably, attorneys bill clients for the time they spend

conferring with each other about various theories and strategies to employ in their cases. Such time is reasonably expended and is appropriately awarded in a motion for fees.

Likewise, Defendant objects to the hours that Branch spent as "second chair" at trial and her travel time to and from the trial. In support, Baird cites to the *Tinch v. City of Dayton* decision. However, this case is unlike *Tinch*. In *Tinch*, the court awarded fees for an attorney who second-chaired, although at a lower rate than the one requested, because the plaintiffs entries were vague about the tasks the attorney performed while second-chairing the trial. 199 F. Supp. 2d at 763. In contrast, here, Plaintiffs explained the tasks Branch performed at trial in their Reply to Defendant's Memorandum in Opposition. Branch took notes and developed the Findings of Fact & Conclusions of Law, tracked admitted exhibits, and assisted Gerhardstein and Greer in their examination of witnesses.

In considering an argument similar to Defendant's, the Northern District of Ohio reasoned, "[c]onsidering the nature of this case, the number of exhibits admitted at trial (over 150). . .this Court finds the staffing to be entirely reasonable." *Cleveland Area Bd. of Realtors*, 965 F. Supp. at 1022. Having presided over this trial and considering Plaintiffs' explanation of the duties Branch performed at trial, the Court finds that her participation was not duplicative or unnecessary. Her travel time, too, was reasonable because her participation at trial was necessary.

Additionally, Defendant avers that Branch should not be allowed to recover 2.10 hours of time on June 12 and 13, 2003 that she spent preparing exhibits and exhibit books and lists for trial. Defendant argues such time is duplicative because she and other paralegals claimed hours for those same tasks in February, May and early June, before trial. However, Plaintiffs

explained in their Reply that the 2.10 hours was for last minute additions to the trial notebook. Those 2.10 hours then, were reasonably expended by Branch and will be part of the lodestar calculation.

Under the heading "Inefficient Use and Allocation of Resources," Defendant seeks to have the hours Plaintiffs expended in preparing two versions of the Findings of Fact and Conclusions of Law ("FF & CL")[5] reduced by 50%. Defendant argues that much of the February version was taken from Plaintiffs' Complaint and much of the July version was taken from the earlier February version, such that it would be unreasonable to allow the attorneys to bill such a large amount of time for simply cutting and pasting. Plaintiffs retort, however, that the facts in the February version of the FF & CL were much more extensive than those in the Complaint and the drafting of the Conclusions of Law required substantial legal research. Furthermore, Plaintiffs argue the time spent preparing and editing the post-trial FF & CL was "remarkably efficient," "given the two day trial, the 500 pages of transcripts, the constitutional arguments, the plaintiffs' burden of proof, and the 20 page limit set by the court on the post-trial brief."

None of the charges "appear unreasonable on their face," so for the reasons cited by Plaintiffs, the Court agrees with them on this ground, and Defendant's request for a 50% reduction is denied. *See Wooldridge*, 898 F.2d at 1177 (remanding to the district court on determination of whether defendant's argument that attorneys spent too much time preparing and editing court documents was valid, but noting, "[s]ome charges appear unreasonable on their

---

[5]Plaintiffs submitted their Proposed FF & CL first in February, 2003 and then again in July of 2003.

face.").

Baird also objects to 16.80 hours of Branch's time that she spent preparing exhibit books, drafting "to do" lists and case plans, indexing depositions and preparing for trial. Defendant argues that a legal assistant or law clerk could have performed these tasks, so Branch's $250/hour rate is unreasonable. Baird posits that, if at all, Plaintiffs should be allowed to recover only $75/hour (the paralegal rate) for these hours. However, in its Reply, Plaintiffs explain that much of that work was done immediately before trial, when only Branch was available to do it, and, furthermore, that those tasks are properly performed by an attorney, not a paralegal or law clerk.

An attorney should choose which exhibits to use for trial. An attorney possesses the knowledge to prepare case plans and formulate "to do" lists, and an attorney prepares for cross-examination of a witness. These 16.80 hours, then, were reasonably performed by Branch (and more cheaply than if they were done by Gerhardstein or Greer) and will be calculated in her portion of the lodestar determination at $250/hour.

Defendant's final argument pertains, again, to the February 12, 2003 hearing. Baird believes that because Plaintiffs lost on the Motion to Transfer Venue, any time spent by any one in connection therewith should be denied. Defendant cites to the Sixth Circuit's *Granzeier v. Middleton*, 173 F.3d 568, 577 (1999) decision, which provides, "[i]f a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." However, *Wooldridge* makes clear that, "*[t]he question is not whether a party prevailed on a particular motion . . . [r]ather, the standard is whether a reasonable attorney would have believed the work to be reasonably

13

expended in pursuit of success at the point in time when the work was performed." 898 F.2d at 1177.

A reasonable attorney certainly would have prepared an argument opposing a Motion to Transfer Venue and would have directed paralegals and law clerks to conduct research thereon. Plaintiffs' loss, in hindsight, on this mere venue issue, cannot make the hours expended in preparation for contesting Defendant's Motion unreasonable.

### B. Defendant's Motion to Defer Ruling on Plaintiffs' Motion for Fees

Defendant requests the Court to defer ruling on Plaintiffs' Motion for Fees because Defendant is appealing this Court's Amended Order. Defendant argues that although Plaintiffs presently are "prevailing parties" in this case, the Sixth Circuit's decision on appeal may change that status. According to Defendant, the interests of judicial economy and efficiency support its request for deferral.

Plaintiffs aver, however, that it will conserve judicial resources to decide its Motion for Fees now because Defendant likely will appeal that decision as well, such that the issues on the merits and fees can be consolidated on appeal. Plaintiffs point out that the Sixth Circuit's judicial resources could be conserved in this way because if it reverses on the merits, it will not have to consider the fee issue.

Here, Baird does not contest that Plaintiffs are "prevailing parties," nor could he make that argument. And, although this case is awaiting appeal, Plaintiffs already have prevailed on all significant issues in the litigation before this Court. As prevailing parties, Plaintiffs are entitled to their fees now, not after an appellate court also has agree that Plaintiff prevailed below. Furthermore, given the likelihood that Baird will appeal this ruling, judicial resources

will be conserved by a decision now, prior to the determination on appeal, such that the issues on the merits and fees can be consolidated.  Therefore, Defendant's Motion to Defer Ruling is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Defer Ruling and **GRANTS** Plaintiff's Motion for Interim Attorney's Fees and Expenses. Accordingly, the Court hereby **ORDERS** the Defendant to pay the Plaintiffs' attorney's fees and litigation expenses in the amount of **$147,617.66**, reflecting $140,596.50 in attorneys fees for: 137.6 hours of work for Gerhardstein, billed at a rate of $350/hour; 66.5 hours of work at a rate of $300/hour for Greer; 272.25 hours of work at $250/hour for Branch; 4.4 hours of work performed by paralegals at a rate of $75/hour; 35.6 hours of work performed by paralegals at a rate of $65/hour; and 35.6 hours of law clerk time at $50/hour; and uncontested costs in the amount of $7,021.16.

**IT IS SO ORDERED.**

                                          s/ Algenon L. Marbley
                                          **ALGENON L. MARBLEY**
                                          **UNITED STATES DISTRICT JUDGE**

**Dated: December 15, 2003**