UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PHILICIA W. BARNES** f.k.a. | : | Case No.: C-1-00-780 |
| **PHILLIP W. BARNES** | : | (Judge Dlott) |
| | : | |
| **PLAINTIFF** | : | **DEFENDANT CITY OF CINCINNATI'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INTERIM ATTORNEY FEES AND EXPENSES** |
| | : | |
| vs. | : | |
| | : | |
| **CITY OF CINCINNATI** | | |
| | : | |

Defendant, City of Cincinnati, respectfully submits the following memorandum in opposition to Plaintiff's motion for interim fees and expenses and requests that the same be denied.

**Procedural History:**

In response to Plaintiff's initial and supplemental request for interim fees and expenses, City filed a motion for stay on the issue since the case is on appeal to the 6th Circuit Court of Appeals. In accordance with the Court's Order of 12/15/03 (Doc #119), the City submits the following in response to Plaintiff's request:

There are three issues that will be addressed in this response: (1) the reasonableness of the fees and expenses sought, (2) the hourly rate requested under the lodestar application, and (3) the appropriateness of a multiplier.

1

**Reasonableness of fees:**

In order to recover any fees, the Plaintiff must be the prevailing party. *Blum v. Stenson,* 465 U.S. 886; 104 S. Ct. 1541 (1984). Although this matter is on appeal, at this point in time the Plaintiff has prevailed in obtaining a verdict in his favor. However, Plaintiff has submitted various hours for compensation on issues for which he did not prevail. In the Plaintiff's Complaint, a claim for sexual harassment was alleged and pursued. The Plaintiff voluntarily dismissed this claim on the eve of trial. Plaintiff did not prevail on this claim and any time attributed to same should therefore be summarily denied.

Plaintiff's time records are not sufficiently detailed to determine the time devoted to this dismissed allegation. It is reasonable to assume that time was expended in pursuit of this failed claim including written and deposition discovery, drafting researching and responding to the City's Motion to Dismiss, Motion for Summary Judgment and other pleadings. It is requested that the Court take such facts into consideration as to the reasonableness of the hours submitted. Although the time records submitted are not specific as to the amount of time expended on this dismissed claim, there does exist in counsel's time records certain hours, which are clearly designated as exclusively devoted to this dismissed claim. At the very least, it is requested that such time be eliminated from any award of attorneys' fees.

Plaintiff has further submitted hours on an unrelated Motion for Injunctive Relief filed and argued post-verdict. In this motion, Plaintiff sought an injunction against any retaliation or further discrimination, which was granted by this court. However, the majority of the motion sought toinjoin the application of Article XII of the City's Charter as well as a request for reinstatement. The Court denied the Article XII argument and Plaintiff voluntarily withdrew

his request for reinstatement prior to argument. Included in the time requested are hours spent opposing motions to intervene filed by Third parties as a direct result of the Article XII issue. Having not prevailed on these issues presented to the Court, Plaintiff's time submitted should be denied.

## II.     The Lodestar Application:

In *Blum v. Stenson*, the Supreme Court reiterated: "[i]n actions to enforce federal civil rights, § 1988 authorizes a court, 'in its discretion,' to 'allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'  The legislative history explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys.' 465 U.S. 886, 897; 104 S. Ct. 1541, 1548 (1984) (citing S. Rep. No. 94-1011, p. 6 (1976)).  "The party seeking the attorneys fees bears the burden of documenting his entitlement to the award." *Powers v. Leis*, U.S. District Court Case No. C-1-00-274, p. 6 (Jan. 24, 2003) (citing *Reed v. Rhodes*, 179 F. 3d 453, 472 (6th Cir. 1999)). Furthermore, "an attorney's normal hourly billing rate "should be a key focal point in award determinations." *Id*., (citing *Kelley v. Metro County Bd. of Educ.*, 773 F.2d 677, 683 (6th Cir. 1985)).

### A.     Plaintiff's attorney's fees are not at a "normal hourly billing rate"

#### 1.     Jennifer Branch's fees

Plaintiff's attorney, Jennifer Branch, states that since joining Laufman & Gerhardstein she has sought compensation at her established billing rate of $180.  Branch Declaration, ¶ 6 – Exhibit #2 (Plaintiff's Motion for Interim Attorney Fees and Expenses (hereafter "Plaintiff's Motion")).  Jennifer Branch states that in March 1999 she was awarded fees of $180 per hour in an individual civil rights action and that in August 1999 she was awarded fees of $180 per hour

in a class action prisoner civil rights case, and that in addition, other cases have settled for "close to the demanded rate of $180 per hour." *Id*. Jennifer Branch does not state when these other cases were settled or how "close to" $180 per hour they were settled for. Neither does she maintain that $180 per hour was the rate she received for any but the two cases she cites, rather she merely states that $180 per hour was what she sought.

Jennifer Branch then states that in 2000 she has "sought compensation at the rate of $200 per hour and that "one case has settled based on fees requested at this rate in 2000. *Id*, at ¶ 7. She continues: "this court has awarded me fees at the rate of $200 for work performed in 2001 in one case. *Id*. Once again, she does not assert that she received $200 per hour for any but the single case to which she refers.

Jennifer Branch then maintains, that since January 2002 she has sought compensation at the rate of $250 per hour, that "clients have paid me at this rate," and that "one case is in the process of being settled at this rate in 2003." *Id*. at ¶ 8. Again, she does not contend that $250 per hour is her standard rate, only that it is what she seeks, and she implies that it is the rare occasion on which she has realized this rate in 2002 and 2003.

The only inferences that may be drawn from Jennifer Branch's statements, then, are that $180 per hour was the highest billing rate for Jennifer Branch in 1999 and did not increase between March and August of that year; $200 was the highest billing rate for Jennifer Branch in 2000 and 2001; and $250 is the highest rate that she has billed at in 2002 and 2003. Since each of those figures was at the upper limit of what Jennifer Branch billed in each of the years, Jennifer Branch's "normal hourly billing rate" must be lower than the figures she provides. That Jennifer Branch cites only one or two cases in each given year as the basis of her asserted billing rate only supports the conclusion that the rates she cites are anomalous, and her general hourly

4

rate must be less, although no documentation has been submitted that would indicate what those normal hourly billing rates might be. Because Plaintiff's attorneys have not met their burden of proving that $250 per hour is the "normal hourly billing rate" for Jennifer Branch, they should not be permitted to realize fees for Jennifer Branch at that rate.

### 2. Alphonse Gerhardstein's fees

Similarly to Jennifer Branch's fees in this case, Alphonse Gerhardstein's fees would appear to exceed his normal hourly billing rate. Alphonse Gerhardstein states in his declaration that he is "currently engaged by one client on a non-contingent fee basis at the rate of $300 per hour. See Gerhardstein Declaration, ¶ 7 (Exhibit #1 –Plaintiff's Motion). From the evidence presented, the stated rate of $300 per hour is based on a single case, and appears to be the highest hourly rate realized by Alphonse Gerhardstein, rather than his "normal hourly billing rate." And even that rate is $50 per hour less than the $350 per hour he requests in this case.

Plaintiff's Motion refers to two cases in which Randy Freking was lead counsel as its basis for $350 per hour as a reasonable fee for Alphonse Gerhardstein: *Gatch v. Milacron Inc.*, S.D. Ohio No. C-1-991009, (Doc. 79) (Exhibit #4 – Plaintiff's Motion); and *McDaniel and Kammer v. City of Cincinnati*, U.S.D.C. No-99-CV-325 (Doc. 53) (Exhibit # - Plaintiff's Motion). But the court in *Gratch*, in addition to citing the fees of $350 per hour awarded to Randy Freking in *McDaniel* as one source of its determination that $350 per hour was a reasonable hourly billing rate for Randy Freking, also stressed that Randy Freking represented to the Court "that this is the fee which he charges for his time in those cases in which he bills his services by the hour." *Gratch*, p.5.

In this case, Plaintiff's attorneys provide no evidence that Alphonse Gerhardstein has been compensated or awarded at the rate of $350 per hour in any other case. Nor do they aver

5

that Alphonse Gerhardstein has charged $350 per hour in any case in which he has billed his services by the hour. The declarations of Kenneth R. Faller and Paul Tobias only establish that the rates claimed by Alphonse Gerhardstein and Jennifer Branch fall within the **range** of reasonable hourly billing rates in Cincinnati. Neither of the two above criteria, to which the court looked in *Gratch* in determining that Randy Freking's claimed hourly billing rate of $350 was reasonable, are met by Plaintiff's attorneys in their claim of $350 per hour as a reasonable fee for Alphonse Gerhardstein. Because Plaintiff's attorneys have not met their burden of proving that $350 per hour is the "normal hourly billing rate" for Alphonse Gerhardstein, they should not be permitted to realize fees for Alphonse Gerhardstein at that rate.

B. **The fees are not prorated according to the years during which this litigation occurred.**

Plaintiff's Motion would have the court award Plaintiff's attorney fees at rates they claim to use in 2002 and 2003, for work they performed in 1999, 2000, and 2001. Jennifer Branch's Declaration demonstrates that her hourly billing rate increased from a maximum of $180 per hour in 1999, to a maximum of $200 per hour in 2000 and 2001, to a maximum of $250 in 2002 and 2003. Presumably, as she gained experience and expertise, her hourly billing rate increased. Although no similar progression is shown in the hourly billing rate for Alphonse Gerhardstein, the same principle assumedly applies, and the $300 per hour he is receiving from one client in 2003 is reflective of his rate as of 2003. Nonetheless, it hardly stands to reason that either counsel should bill for work done in 1999 at the rates they claim to assess in 2003; to do so would be to pay them for rates they have not yet charged. The fees for each should be assessed at the concomitant "normal hourly billing rate" for each of the years they litigated this case, not at the 2003 rate they assert, for all the preceding years they worked on the case.

### C. **Plaintiff's Attorneys should not be awarded the "lodestar" amount they seek because an award of that amount would constitute a windfall.**

Plaintiff's attorneys have not met their burden of establishing their normal billing rates. They have merely asserted the highest rates that they have received from 1999 to 2003, and then seek such rates as the hourly rates claimed for the entire period of the case at bar. But the hourly rates they claim are not their "normal billing rates," because the claimed rates represent the highest rates they have received at any time during the past four years.

A more reasonable assessment of their normal billing rates would be one that looked to all their cases during the time period of the trial, that derived a "normal hourly billing rate" for each year from those cases, and then estimated fees in this case based on those yearly norms. But Plaintiff's attorneys have not provided any such information from which a reasonable estimate of their "normal hourly billing rates" could be derived.

Plaintiff's attorneys appear to have applied the highest hourly rates for each attorney for any time during the four years to the entire period of the litigation. This, despite their own evidence that their rates were lower in 1999 than in 2003. According to Plaintiff's attorneys, the highest rate they received in 2003 should be applied retroactively to the work they did in 1999, ignoring the fact that the increased fees in 2003 reflected the increase in their experience from 1999 to 2003. By this standard, Plaintiff's attorneys would be paid for the work they did in 1999 for the experience and expertise they acquired after 1999. Instead, if fees are awarded, they should be prorated according to "normal hourly billing rates" over the last four years: work done in 1999 should be billed at the 1999 rate, work done in 2000 should be billed at the 2000 rate, and so on. To isolate the highest fees received at any point during the four-year period of the litigation, and to then apply those highest fees to the entire period is to seek a windfall, the very result cautioned against by Congress and acknowledged by the Supreme Court in *Blum*.

Because Plaintiff's attorneys have failed to meet their burden of documenting the hourly billing rates they claim are reasonable, and because Plaintiff's attorneys have failed to prorate their billing rates by year, this court should not accede to Plaintiff's attorneys' assessment of the lodestar amount and should deny Plaintiff's attorneys the windfall they seek.

### III. Multiplier is not appropriate

In reference to enhancement of attorney awards under § 1988, the Supreme Court has repeatedly emphasized that there is a "strong presumption" that the lodestar amount represents a reasonable fee. *Blum*, 465 U.S. 886, 104 S. Ct. 1541; *Hensley v. Eckhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983); *City of Burlington v. Dauge*, 505 U.S. 557, 112 S. Ct. 2638 (1992). In *Blum*, the Court rejected the District Court's reasons for enhancement of the fee award to the plaintiff's counsel, amongst which were the novelty and complexity of the issues, the experience and special skill of the attorneys, and high quality of the representation. 465 U.S. at 898-99. Addressing the novelty and complexity of the issues as a basis for enhancement, the Court reasoned:

> The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates. There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award.

*Id*, at 898. Turning to the asserted high quality of representation as a reason for enhancement, the Court continued:

> The "quality of representation," however, generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment *only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly*

8

>  *rates charged and that the success was "exceptional."* See *Hensley*, 461 U.S., at 435. Respondent offered no such evidence in this case, and on this record the District Court's rationale for providing an upward adjustment for quality of representation is a clear example of double counting. [emphasis added].

Defendant acknowledges that counsel is highly regarded and certainly has the requisite skills to perform their legal services properly. Although Defendant believes while the facts may be novel, the claims are basically Title VII sex discrimination and a Section 1983 constitutionality claim. Even assuming a novel and complex nature to this case, the application of the *Johnson* factors cited by Plaintiff in both *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989) and in *Paschal v. Flagstar Bank*, 297 F. 3d 431 (6th Cir. 2002) do not support a multiplier in this case. As cited in *Blum* supra, the novelty and the complexity of the case are not appropriate factors in determining whether to increase an award. Counsels' cited previous highest billing rates of $300 and $250 dollars respectively, are clearly within range of similarly charged services in the community for highly skilled quality representation. And therefore is reflective of the high quality of representation. As such, any pro-rated application of hours to said rates are full compensation for the services rendered. No evidence has been presented that counsel had to forego other employment, was under any time limitation by the client nor had any special relationship with the Plaintiff. Plaintiff fails to meet a majority of the Johnson factors relied upon.

In summary, it is respectfully requested that the Court stay its decision on the Plaintiff's motion for fees pending appeal; reduce all hours incurred for time expended on issues for which Plaintiff had not prevailed; limit counsel's rate to their respective "normal rate" pro rate such rate for each year in which time was expended and deny the application of a multiplier for the reasons set for above.

Respectfully submitted,

JULIA L. MCNEIL (0043535)
City Solicitor

S/ Augustine Giglio
AUGUSTINE GIGLIO ( 0031911)
GERI H. GEILER (0042081)
Sr. Assistant City Solicitors
Trial Attorney for Defendant
Room 214, City Hall
Cincinnati, Ohio 45202
Telephone: (513) 352-3339
Fax (513) 352-1515
Gus.giglio@cincinnati-oh.gov
Geri.geiler@cincinnati-oh.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2004, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties my access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. Mail upon all parties for whom counsel has not yet entered an appearance electronically.

/s/ Augustine Giglio
AUGUSTINE GIGLIO ( 0031911)
GERI H. GEILER (0042081)
Sr. Assistant City Solicitors
Trial Attorneys for Defendants
Room 214, City Hall
Cincinnati, Ohio 45202
Telephone: (513) 352-3339
Fax (513) 352-1515
gus.giglio@cincinnati-oh.gov
geri.geiler@cincinnati-oh.gov