UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PHILECIA BARNES, formerly** | : | Case No. 1: 00-CV-780 |
| **known as PHILLIP W. BARNES,** | : | |
| | : | JUDGE SUSAN DLOTT |
| **Plaintiff,** | : | |
| | : | **PLAINTIFF'S REPLY TO** |
| vs. | : | **DEFENDANT'S OPPOSITION** |
| | : | **TO MOTION FOR ATTORNEY** |
| **CITY OF CINCINNATI,** | : | **FEES** |
| | : | |
| **Defendant.** | : | |

Plaintiff has submitted two petitions for interim attorney fees and costs (Doc. 94, and 105) and a notice of supplemental authority attaching Judge Marbley's award of attorney fees to Alphonse A. Gerhardstein and Jennifer L. Branch at the rates of ($350 and $250 respectfully). (Doc. 120). These two interim fee petitions request fees through August 11, 2003.

The City objected to the motions for attorney fees on basically three grounds: inclusion of hours on claims where plaintiff was not the prevailing party; the reasonableness of the attorney rates; and the use of a multiplier. The City introduced no evidence in support of its arguments.

The City did not object to the rates of paralegals ($65), law clerks ($50) or Robert Laufman ($300). Nor did the City raise any objection to the number of hours expended by the paralegals, law clerks or Mr. Laufman. The City did not object to the vast majority of the hours expended by Jennifer Branch or Alphonse Gerhardstein, except for those few hours devoted to "unsuccessful claims" which are discussed below. The City did not challenge Mr. Gerhardstein or Ms. Branch's hours as unreasonable, excessive, duplicative, unnecessary, lacking billing judgment, or otherwise noncompensable. Finally, the City raised no objections to the expenses ($25,837.61).

A. **Plaintiff Is The Prevailing Party So All Reasonable Hours Should Be Compensated**

A Plaintiff is a prevailing party when she obtains relief on the merits of her claim, even where the victory is only *de minimus*. *Farrar v. Hobby*, 502 U.S. 103, 113 S.Ct. 560 (1992). There is no question that the jury verdict for Plaintiff, in the amount of $320,000, makes Plaintiff a prevailing party. In fact the City concedes as much. Therefore, all reasonable attorney hours should be compensated

The City argues that Plaintiff's attorneys should not be compensated for the hours spent pursuing the sexual harassment claim. The Court denied the City's motion for summary judgment on this claim. Plaintiff voluntarily dismissed the claim before trial. The City did not delineate the number of hours attributed to pursuing this claim because such a calculation is not possible given the overlapping evidence and arguments between the claim for sexual harassment and sex discrimination. To the extent that time spent on an unsuccessful claim "aided or was reasonably calculated to aid the claims of successful plaintiffs it is compensable--even though it may also have been performed to aid those plaintiffs who [were not successful]. The guiding principle is that the work must in some way have been expended in pursuit of a successful claim . . . ." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1174 (6th Cir. 1990).

Moreover, this time is compensable since Plaintiffs are prevailing parties and obtained the ultimate relief requested.

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Wooldridge* at 1177. Even when an employee is successful in proving one claim but losing on all others, the plaintiff is a prevailing party eligible to recover all reasonable attorney fees. *See, Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir. 1992) (verdict on retaliatory discharge was sufficient to render him "prevailing party" eligible to recover reasonable attorney fees, even though he was unsuccessful on his age discrimination claim).

The City further challenges the hours on an "unrelated Motion for Injunctive Relief" filed post jury verdict. Injunctive relief was requested in Plaintiff's Complaint (Doc. 1). The City concedes that the Court awarded injunctive relief by enjoining the city from retaliating against Plaintiff. While Plaintiff was not successful on the remaining injunctive relief requested, enjoining application of Article XII, the Plaintiff was still a prevailing party and entitled to reasonable attorney fees for the same reasons cited above.

B.   **Plaintiff's Attorney's Rates are Reasonable**

The City challenges Mr. Gerhardstein's rate of $350 and Ms. Branch's rate of $250 without offering any evidence of what a reasonable rate should be. The City argues that these attorneys' rates are not their "normal hourly billing rate" and that the rates should be pro-rated over the four years the litigation was pending. Each argument is without merit.

The City uses the wrong standard. The Supreme Court has made it clear that rates are based on the "prevailing market rates in the relevant community." *Blum v. Stevenson*, 456 U.S. 886, 895, 104 S.Ct. 1541, 1547 (1984). Prevailing market rates are those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. at 895 & n. 11; *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). An attorney's customary rate, supported by a generalized affidavit of a "local practitioner with considerable experience in the field of anti-discrimination law stat[ing] that he

3

had reviewed the litigation and the attorney's fees and that they were reasonable for the jurisdiction" is sufficient evidence of a reasonable market rate. *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239-40 (6th Cir. 1995). An attorney's "normal billing rate" as the City characterizes is not dispositive. Even a Legal Aid lawyer who charges nothing to her clients, is entitled to market rates. *Blum* at 895, 104 S.Ct. at 1547.

A district court has broad discretion in determining a reasonable hourly rate. While a district court should first look at the attorney's ordinary rate, that is a starting point, not an ending point. *New Cherokee* at 240-241, *citing*, *Northcross v. Board of Education*, 611 F.2d 624, 638 (6th Cir. 1979).

> In determining what the level of compensation for each category of service should be, the court should look to the fair market value of the services provided. In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance . . . . This does not mean that the routine hourly rate charged by attorneys is the maximum which can or should be awarded. In many cases that rate is not "reasonable," because it does not take into account special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services rendered

*New Cherokee* at 239. A court's determination of a reasonable hourly rate that is based on the affidavit of the attorney seeking compensation and one affidavit by a local practitioner with considerable experience who stated that he had reviewed the litigation and the attorneys' fees and that they were reasonable for the jurisdiction is sufficient evidence on which to basis a determination of a reasonable rate. *New Cherokee* at 240-241.

Plaintiff submitted sufficient evidence for this Court to conclude that the rates are reasonable. Mr. Gerhardstein and Ms. Branch have been awarded these rates. In a civil rights case tried to the bench in June 2003, Judge Marbley recently awarded Plaintiff's counsel fees at

the rates of $350 per hour for Alphonse A. Gerhardstein; $250 per hour for Jennifer L. Branch; $75 and $65 for paralegals and $50 for law clerks. See Ex. A attached to Doc. 120.[1] Each attorney testified by declaration that their current billing rate is $350 and $250 respectfully. See Declarations of Gerhardstein and Branch attached to Doc. 94. Their rates are consistent with the community of attorneys in Cincinnati. See Declaration of Robert Newman attached to Doc. 94. Mr. Laufman's rate of $300, which the City did not contest, Mr. Newman's rate of $300, and Mr. Frieking's rate in *McDaniel and Kammer v. City of Cincinnati*, USDC No. 99-CV-325 (Doc. 53) of $350, and the survey Mr. Newman summarized in his declaration all support the rate request.

Mr. Faller's testimony is particularly supportive. Mr. Faller is a partner in the firm of Beckman, Weil, Shepardson and Faller, LLC and is the Chair of the firm's litigation group. He testified that his personal practice includes employment discrimination litigation. He testified to the outstanding reputation of the attorneys at Laufman & Gerhardstein and that based on his personal observations conclude that the lawyers "routinely display a level of knowledge, skill and ability which is exemplary, if not unparalleled, in the Greater Cincinnati area." Declaration of Faller ¶ 2. Mr. Faller testified that in his judgment, "the hourly rates requested by [Laufman & Gerhardstein's] lawyers fit comfortably within the range of rates typically and customarily charged by lawyers with comparable years of experience in Cincinnati and in Southwestern Ohio." Declaration of Faller ¶ 3. Likewise, Mr. Paul Tobias, who has 44 years experience in law and employment law, testified that Mr. Gerhardstein's $350 rate and Ms. Branch's $250 rate were reasonable. Declaration of Tobias ¶ 13.

---

[1] Magistrate Judge Novotny also awarded Mr. Gerhardstein and Ms. Branch fees at the rates of $350 and $250 respectively in U.S.D.C. S.D. Ohio, Misc. Case No. 1:03-MC-46. See, Motion for Protective Order and to Quash Subpoena (Doc. 1), Reply to Response to Motion (Doc. 3), and Order Granting Sanctions (Doc. 4) (November 20, 2003).

Additionally, the Court may draw on its own experience as a former practitioner and from reviewing fee petitions. *Akron Ctr. for Reproductive Health v. City of Akron*, 604 F. Supp. 1275, 1288 (N.D. Ohio 1985). The City submitted no evidence contradicting Plaintiff's evidence of the market rates in Cincinnati. Therefore, the Court has sufficient evidence on which to base a finding that Mr. Gerhardstein and Ms. Branch have shown that their rates of $350 and $250, respectively, are based on the prevailing market rates and are thus reasonable.

Finally, the City argues that Mr. Gerhardstein and Ms. Branch's rates should be "prorated" over the course of the litigation since their rates increased from 1999 through 2003. The City cites no case law in support of this argument. Nor does the City offer evidence of the interest and inflation adjustments if historic rates were to be applied. The Supreme Court has made it clear that when litigation is protracted, thus delaying an attorney's compensation for years, application of current billing rates is appropriate. *Missouri v. Jenkins*, 491 U.S. 274, 282-84, 109 S.Ct. 2463, 2468-69 (1989). The Sixth Circuit has held that it is proper for district courts to consider compensating for inflation and interest either by using current rates or by making an upward adjustment to the historic rates.[2] (*See*, *Louisville Black Police Officers Org., Inc. v. City of Louisville*, 700 F.2d 268, 274-76 (6th Cir. 1983) and *Northcross* at 640). Other circuits have approved the use of current rates for fees incurred over a long period of time. *See*, *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); S*ussman v. Patterson*, 108 F.3d 1206 (10th Cir. 1997); *Daly v. Hill*, 790 F.2d 1071, 1080-81 (4th Cir. 1986); *Laffey v. Northwest Airlines, Inc.*,

---

[2]    Plaintiff does request an upward adjustment of the lodestar amount, but not based on the delay in payment, thus it would be appropriate for the Court to consider the delay in payment as grounds for the use of current rates.

746 F.2d 4, 20 n.104 (D.C. Cir. 1984); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955 (1st Cir. 1984). Therefore, counsel's current rates should be applied.

    **C.**     **A Multiplier is appropriate in this case**

The City argues that Plaintiff "fails to meet a majority of" the *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th cir. 1974) factors and therefore is not entitled to an enhancement. Plaintiff has submitted evidence showing that eleven of the twelve Johnson factors support an enhancement in this case.

1) *The time and labor required* is evident from the more than 1,000 hours of attorney time expended over four years.

2) *The novelty and difficulty of the questions* presented are obvious from the lack of case law nation-wide on transsexual employees asserting protection under Title VII from gender based discrimination (See City's soon to be filed appellate brief).

3) *The skill requisite to perform the legal service properly* and 9) *the experience, reputation, and ability of the attorneys* were apparent given that the Plaintiff is a transsexual male to female current police officer for whom Plaintiff's counsel persuaded a jury to award $150,000 in compensatory damages and $140,000 in front pay. Furthermore, the City graciously conceded that Plaintiff's counsel are highly regarded and have the requisite skills to perform their legal services properly. (Doc. 21 p. 9).

4) *The preclusion of other employment by counsel* can be extrapolated from the number of attorney hours devoted to the case by Mr. Gerhardstein (over 255) and Ms. Branch (over 785). The Court can deduce that had counsel not been representing Ms. Barnes, that they would have spent the more than 1,000 hours on other cases.

5) *The customary fee* and 6) *whether the fee is contingent or fixed* weighs in favor of an enhancement since Plaintiffs took the case on contingency and not by charging an hourly fee to the client.

7) *Time limitations imposed by the client or the circumstances* were presented in this case more than in most employment cases since Plaintiff remained employed as a police officer throughout the four years of litigation and remains so employed. A swift jury verdict and the injunctive order enjoin retaliation were necessary for Plaintiff to perform successfully as a police officer. In fact, Plaintiff was recently evaluated by the City and given an outstanding review (See Exhibit A).

8) *The amount involved and the results obtained* are extraordinary. The jury verdict of $320,000 was exceptional and outstanding. See Declarations of Newman ¶3 and Tobias ¶ 12. Mr. Tobias opined that this was a very unusual case that presented formidable obstacles and that Mr. Gerhardstein and Ms. Branch were "extremely creative and courageous in litigating this case and achieved excellent results for Ms. Barnes. Their success is a credit to their hard work, dedication, and brilliance." Declaration Tobias ¶ 12. Mr. Faller stated "I believe this result to be excellent, even extraordinary, considering the difficult legal issues involved and the unusual attributes of the Plaintiff." Faller Declaration ¶ 4. Furthermore, evidence of the success of the litigation is shown in Officer Barnes' recent performance report where she received overall scores of 19 and 20 and was recommended to study for the next promotional exam (Exhibit A).

10) *The "undesirability" of the case* was shown by Mr. Newman when he testified that "the result that Mr. Gerhardstein and Ms. Branch achieved for Ms. Barnes was extraordinary, especially in light of the fact that few, if any, lawyers in Cincinnati would have represented Ms. Barnes so zealously." Declaration Newman ¶ 3. Mr. Tobias stated that he was aware of "very

very few attorneys in the nation who would have taken this case against the City of Cincinnati." Declaration Tobias ¶ 12. Mr. Faller testified: "I am acquainted with and/or have litigates with or against a large segment of the local bar which regularly handles Plaintiff Civil Rights/ Employment Discrimination. I doubt that any of these practitioners with whom I am acquainted would have agreed to represent Philecia/Phillip Barnes in a Title VII case." Faller Declaration ¶ 4.

12) *Awards in similar cases* support the enhancement. See cases cited at Doc. 94, p. 8-9.

When these Johnson factors are viewed together, there is substantial support for this court to award a multiplier of 1.75.[3]

**D.  Conclusion**

Plaintiff respectfully requests that this Court grant an interim fee award for work performed through August 11, 2003 for **$553,725.73**. This number includes attorney fees of $301,650.50 times a multiplier of 1.75, which equals $527,888.37, plus costs of $25,837.36.

Respectfully submitted,

s/ Jennifer L. Branch
Alphonse A. Gerhardstein #0032053
Trial Attorney for Plaintiff
Jennifer L. Branch #0038893
Attorney for Plaintiff
LAUFMAN & GERHARDSTEIN
617 Vine Street #1409
Cincinnati, Ohio 45202
(513) 621-9100

**CERTIFICATE OF SERVICE**

---

[3]  While the City objects to the multiplier, it did not object to the amount.

I hereby certify that on January 7, 2004, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

                                                s/ Jennifer L. Branch
                                                Attorney for Plaintiff