IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Philecia Barnes, formerly known as Phillip W. Barnes | : | Case No. C-1-00-780 |
| Plaintiff | : | District Judge Susan J. Dlott |
| v. | : | ORDER |
| City of Cincinnati | : | |
| Defendant | : | |

This matter comes before the Court on four motions: Defendant's Motion to Stay (doc. #87), Plaintiff's Motion for Interim Attorney's Fees and Expenses (doc. #94), Plaintiff's Second Motion for Interim Attorney's Fees and Expenses (doc. #105), and Defendant's Motion for Stay of Judgment and Plaintiff's Attorneys' Interim Request for Fees Pending Appeal (doc. #109). For the reasons set forth below, the Court **GRANTS** Plaintiff's two motions for fees and costs (docs. #94, 105) and **ORDERS** Defendant to pay Plaintiff's attorneys' fees and litigation expenses in the amount of $553,725.73. The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Stay of Judgment and Plaintiff's Attorneys' Interim Request for Fees Pending Appeal (doc. #109) and **DENIES** Defendant's Motion to Stay (doc. #87) as **MOOT.**

I.   PROCEDURAL BACKGROUND

The facts underlying this suit have been laid out in great detail in prior orders of this

Court.  (See docs. #102, 103.)  The Court will not repeat them here.  However, a brief summary of the procedural background may be helpful.  Transsexual Cincinnati police officer Philecia Barnes tried her case to a jury in February of 2003, claiming employment discrimination in violation of Title VII, 42 U.S.C. § 1983, and Ohio state law.  Barnes alleged sex discrimination under Title VII based on her failure to conform to sex stereotypes and that Defendant City of Cincinnati ("the City") violated her rights under the Equal Protection Clause of the Fourteenth Amendment by demoting her on the basis of her perceived sexual orientation, gender identity, transsexuality, and failure to conform to sex stereotypes.  The jury found in favor of Barnes on all of her claims.  (See doc. #80.)  The jury awarded Barnes $150,000 in compensatory damages and $140,000 in front pay.  (Id.)  The parties stipulated that Barnes was entitled to $30,511 in backpay.  (Doc. #77.)  The City moved for a judgment as a matter or law or alternatively for a new trial.  (Doc. #88.)  The Court denied the City's motion.  (Doc. #102.)

Shortly after the jury returned its verdict, Barnes asked for injunctive relief in five forms: (1) reinstatement to the rank of police sergeant; (2) protection from retaliation; (3) protection from further discrimination on the basis of failure to conform to sex stereotypes in violation of Title VII; (4) protection from further discrimination on the basis of sexual orientation, gender identity, transsexuality, or failure to conform to sex stereotypes in violation of the Equal Protection Clause; and (5) "[i]njunction against Art[icle] XII of the Cincinnati Charter as applied until such time as the City has established employment policies, procedures, and training that implements Article XII in a manner consistent with State and Federal statutory and constitutional law and the other orders of this court."  (Doc. #82 at 1-2.)  The City opposed Barnes' request in part, objecting only to Barnes' request for reinstatement and an injunction against the

enforcement of Article XII of the Cincinnati City Charter. (Doc. #93.) In light of the City's opposition, Plaintiff withdrew her request for reinstatement and instead asked to receive an award of front pay. (Doc. #95.) The Court enjoined the City from retaliating in any way against Barnes for the filing of this lawsuit and from engaging in further discrimination against Barnes on the basis of her perceived sexual orientation, gender identity, transsexuality, or her failure to conform to sex stereotypes. (Doc. #103.) The Court also ordered entry of judgment consistent with the above injunction and the verdict of the jury, including the award of compensatory damages, front pay, and back pay. (Id.) The City appealed a number of the Court's orders (docs. #107, 110) and moved to stay the judgment and Barnes' attorneys' fees petition pending the appeal (doc. #109). Barnes' counsel asks for interim attorney's fees and a denial of the stay unless the City posts a bond. Barnes objects to a stay of injunctive relief. (Doc. #113.)

**II.    ANALYSIS**

Barnes' counsel asks this Court to order an interim fee award of $553,725.73 for work performed through August 11, 2003. That number includes attorney's fees of $301,650.50 with a multiplier of 1.75, which equals $527,888.37, plus costs of $25,837.36. They City opposes this request on the grounds that the hourly rate requested is incorrect, the number of hours spent is unreasonable, and the multiplier is inappropriate. The City seeks a stay of the judgment based on the verdict and backpay stipulation, stay of injunctive relief, and stay of any ruling on the petition for attorney's fees. In the interest of judicial economy, the City's request for a stay of this Court's ruling on attorney's fees is **DENIED** such that any appeal from this ruling on the fee motion can be consolidated with the pending appeal on the merits.

**A.    Attorney's Fees**

1.	**"A Reasonable Attorney's Fee"**

In actions under 42 U.S.C. § 1983, the trial court has the discretion to award to "the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988[1]. A prevailing party is one "in whose favor a judgment is rendered, regardless of the amount of damages awarded." Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 603 (2001) (citing Black's Law Dictionary 1145 (7th ed. 1999)). Put another way, if a plaintiff "receive[s] at least some relief on the merits of his claim," then he has "prevailed." Id. Here, a jury returned a verdict for Barnes on all of her claims, and the Court permanently enjoined the City from retaliating or further discriminating against Barnes. Therefore, Barnes is a "prevailing party" under § 1988. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of the reasonable number of hours and the reasonable hourly rate is termed the "lodestar." See City of Riverside v. Rivera, 477 U.S. 561, 568 (1986). "The party seeking attorneys fees bears the burden of documenting his entitlement to the award." Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999). Plaintiff requests that the Court award fees for 255.9 hours billed by Alphonse Gerhardstein at $350 per hour, 787.4 hours billed by Jennifer Branch at $250 per hour, 2.3 hours billed by Robert Laufman at $300 per hour, 137.7 hours billed by paralegals at $65 per hour, and 111.9 hours billed by lawclerks at $50 per hour. Defendants contend that neither the hourly rates charged nor the hours accrued are reasonable.

---

[1] Courts may also award attorney's fees to prevailing parties in Title VII litigation. See 42 U.S.C.A. § 2000e-5(k).

### a.        Hourly Rates

The Court looks first at the hourly rates requested for Plaintiff's attorneys. The Sixth Circuit has explained, "Attorney fees under § 1988 are to be based on market rates for the services rendered. . . . Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). An attorney's normal hourly billing rate "should be a key focal point in award determinations." Kelley v. Metro. County Bd. of Educ., 773 F.2d 677, 683 (6th Cir. 1985).

Plaintiff has introduced evidence of her attorneys' educational background, civil rights litigation experience, and impressive credentials as well as evidence that her attorneys have been awarded similar hourly fees in other actions. Plaintiff has also submitted an affidavit from Mr. Robert B. Newman, a third party not associated with Barnes' lawyers or this litigation. Newman attests that the rates charged by Gerhardstein and Branch are reasonable in light of the market rates three years ago and reasonable in light of these attorneys' background and experiences. The City points to evidence that $250 was the highest rate Branch has billed, arguing that since $250 per hour appears to be the upper limit of what Branch has billed in the past few years, her "normal hourly billing rate" must be lower than that provided. Likewise, the City argues that since Gerhardstein is currently engaged by a client on a non-contingent fee basis at the rate of $300 per hour and Gerhardstein can point to only one client that he bills at $300 per hour, Gerhardstein's rate must be at least $50 per hour lower than he demands. On this evidence, the City asks that the Court determine the "normal hourly billing rate" for Branch and Gerhardstein for each of the four years the litigation was pending, prorate the hours worked by the rates of

each of the four years, and award Branch and Gerhardstein's fees accordingly. By "prorate" the City asks that the hours worked in 1999 should be paid with a 1999 rate, the hours worked in 2000 paid with a 2000 rate and so forth.

A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. See Hudson v. Reno, 130 F.3d 1193 (6th Cir. 1997) (internal citations omitted). Although the City relies heavily on the proposition that an attorney's "normal hourly billing rate" should control, Sixth Circuit case law holds that in exercising its discretion to determine what constitutes a reasonable hourly rate, a Court should also consider the fair market value of the services rendered by the attorney. See Northcross v. Bd. of Educ. of Memphis City Schools, 611 F.2d 624, 638 (6th Cir. 1979); see also Blum, 465 U.S. at 895. "In most communities, the marketplace has set a value for the services of the attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." Blum, 465 U.S. at 895. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the rates requested are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." Id. at 896 n.11. Although an attorney's routine hourly rate is a key focal point, "[t]his does not mean that the routine hourly rate charged by attorneys is the maximum which can or should be awarded. In many cases that is not 'reasonable,' because it does not take into account special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services rendered." Wells v. New Cherokee Corp., 58 F.3d 233, 239-40 (6th Cir. 1995).

Gerhardstein has filed a declaration in support of his $350 per hour fee. Gerhardstein states that civil rights litigation has been his primary focus in the last 26 years of practice, that he has litigated over 40 "significant" civil rights cases and has been counsel or co-counsel on hundreds of civil rights cases filed in the state and federal courts. He has been a frequent presenter at seminars on civil rights and employment law topics and served as an adjunct professor teaching civil rights litigation. Nothing in the City's evidence or argument indicates that $300 per hour or less is Gerhardstein's normal hourly billing rate. Gerhardstein's declaration specifically states that his fee in the vast majority of his cases is contingent on success and that when he charges an hourly rate he charges various rates for various reasons. Gerhardstein has also supplied the Court with a recent Southern District of Ohio case in which Judge Marbley found Gerhardstein's $350 hourly rate reasonable. See Women's Med. Prof'l Corp. v. Baird, No. 03-162 (S.D. Ohio filed Dec. 16, 2003). Considering the above, the Court concludes that Gerhardstein's requested hourly rate of $350 in this case is reasonable.

Branch requests an hourly rate of $250. Since being admitted to practice, Branch has focused her legal practice on civil rights and poverty law litigation. She has litigated over 15 significant cases in these areas and has been awarded fees of $200 per hour for work performed in 2001. Mr. Newman's affidavit states that Branch's requested $250 per hour fee is reasonable in light of market rates in Cincinnati. Since January 2002 clients have paid Branch at an hourly rate of $250. Considering the above, the Court finds that Branch's requested hourly rate of $250 in this case is reasonable.

The City cites no case law in support of its argument that the Court should prorate Branch and Gerhardstein's fees over the four years that litigation was pending.

> When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later . . . Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.

Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 716 (1987). The Supreme Court has reiterated that compensation received years after the work has been done is not equivalent to prompt payment received as soon as the service is completed. Missouri v. Jenkins, 491 U.S. 274, 282-84 (1989). The Court further held that § 1988 warranted an adjustment for this delay, whether by the application of current hourly rates or enhancement of historic rates. Id. Thus, the City's argument that work performed by Branch and Gerhardstein in 2000 should be awarded based on rates from 2000 fails. The Court therefore concludes that Gerhardstein should be awarded at an hourly rate of $350 and Branch at an hourly rate of $250. The City does not dispute Laufman's fees nor the fees of the paralegals and lawclerks.[2]

          **b.**     **Total Hours**

As discussed above, prevailing parties may win attorney's fees under § 1988. The City argues that Barnes' counsel has submitted hours for compensation on issues on which Barnes did not prevail, such as the claim for sexual harassment voluntarily dismissed on the eve of trial. The City argues that any time attributed to this claim on which Barnes did not prevail should not be compensated and that Barnes' counsel's time records are not sufficiently detailed to

---

[2] The Court finds, based on the Declaration of Kenneth R. Faller (doc. #94 exh. 7) that Mr. Laufman's rates are within the reasonable range of local attorneys and the rates charged for paralegals and lawclerks is typical of rates charged in Cincinnati for such services. The Court therefore finds that the rates requested for Mr. Laufman, the lawclerks and paralegals are reasonable.

determine the time devoted to the sexual harassment claim.  The City argues that, at the very least, the particular hours reported by Barnes' counsel that are clearly designated as exclusively devoted to the dismissed claim should be discounted.  The City further argues that Barnes has submitted hours on an "unrelated Motion for Injunctive Relief" filed and argued post-verdict.  (Doc. # 121 at 2.)  The City contends that although the Court granted the injunction against retaliation and further discrimination, the majority of the motion was devoted to a request for injunction that was denied and a request for reinstatement that Barnes voluntarily withdrew.  The City requests that hours devoted to these matters be denied.

  Calculation of hours spent solely on Barnes' discarded sex harassment claim is impossible because any evidence and argument offered in support of her sex discrimination claim significantly overlaps with that of the harassment claim.  In cases involving a common core of facts or involving related legal theories, plaintiff's counsel may expend hours generally toward the litigation as a whole rather than on a claim by claim basis, allowing recovery for successful claims and for unsuccessful but interrelated claims.  Hensley, 461 U.S. at 435.  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."  Id.  Since Barnes achieved significant success at trial, she is clearly a prevailing party and her counsel's hours spent on the interrelated sex harassment claim should be compensated at a reasonable rate.  As for the "unrelated Motion for Injunctive relief," Barnes' claims for injunctive relief tie directly to her claims at trial.  The City was enjoined from engaging in behavior for which it had been found liable at trial.  The Article XII and reinstatement segments

of the motion for injunctive relief were alternative legal theories involving the same common core of facts that led to a verdict in Barnes' favor at trial and to two forms of injunctive relief post-trial. Therefore, the hours spent working on the motion for injunctive relief – and the Court will add that the hours spent on the motion do not appear to be significant – should also be compensated at a reasonable hourly rate.

Having considered the above issues, the Court finds that the following lodestar is appropriate in this case:

| | | | | | |
|---|---|---|---|---|---|
| Alphonse Gerhardstein | 255.9 hours | x | $350/hour | = | $89,565 |
| Jennifer Branch | 787.4 hours | x | $250/hour | = | $196,850 |
| Robert Laufman | 2.3 hours | x | $300/hour | = | $690 |
| Paralegals | 137.7 hours | x | $65/hour | = | $8,950.50 |
| Lawclerks | 111.9 hours | x | $50/hour | = | $5,595 |

-----------------------------------------------------------------------------------------------------

Total                                                                                                            =     $301,650.50

    **2.**    **The Multiplier**

Plaintiff has also requested that the lodestar be multiplied by 1.75. The Supreme Court has disapproved of or limited many of the factors traditionally used to justify the use of multipliers to adjust fee awards. See Delaware Valley, 478 U.S. at 566-68 ("the overall quality of performance ordinarily should not be used to adjust the lodestar"), reargued on one point, 483 U.S. 711 (1987) (multiplier to account for risk of loss improper); Hyatt v. Apfel, 195 F.3d 188, 191 (4th Cir. 1999) (collecting cases). However, multipliers may still be appropriate where a plaintiff has achieved exceptional results. See Hyatt, 195 F.3d at 192 ("a multiplier of 1.333 was

justifiably applied to the fees on account of the exceptional results obtained by the plaintiffs' attorneys"). The key issue is whether "such an adjustment is necessary to the determination of a reasonable fee." Blum, 465 U.S. at 898. The Sixth Circuit has endorsed the factors delineated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) as evaluative tools when considering a multiplier. Paschal v. Flagstar Bank, 297 F.3d 431 (6th Cir. 2002) (relying on Blanchard v. Bergeron, 489 U.S. 87 (1989)). These twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Blanchard, 489 U.S. at 91 n. 5. The Court may consider these factors in calculating the initial fee or while considering a request for a multiplier. Paschal. 297 F.3d at 435.

  The City argues that none of the Johnson factors apply because "the claims are basically Title VII sex discrimination and a Section 1983 constitutionality claim." (Doc. #121 at 9.) The Court believes that such a categorization does not accurately reflect the nature of the case. This was no average Title VII sex discrimination case but one in which Barnes' counsel were extremely creative in fashioning her case as a Title VII or Equal Protection case based on failure of a public employee with to conform to sex stereotypes and in proving discrimination based on gender identity. The novelty and difficulty of this question, combined with the immense skill

requisite to conducting this case properly, merits an enhancement. The result obtained by Barnes was indeed extraordinary – a verdict for a transsexual police officer against a municipality for violating her Equal Protection rights by demoting her on the basis of her perceived sexual orientation, gender identity, transsexuality, and failure to conform to sex stereotypes. Finally, as third party affidavits submitted by Barnes' counsel state, the case was highly undesirable. Both Kenneth Faller, a partner at a Cincinnati law firm closely acquainted with segments of the local bar handling civil rights and employment discrimination cases, and Paul Tobias, a Cincinnati labor and employment lawyer, state that they are aware of very few lawyers locally or nationally who would have agreed to take on this case. (See doc. # 94, exhs. 7, 8.) Both Faller and Tobias state that in their long experience, the case presented extremely creative and novel lawyering. Based on the above, the Court finds that this level of success demonstrates that the lodestar does not constitute a reasonable fee. Rather, applying a multiplier of 1.75 to the lodestar would provide appropriate and reasonable compensation for the extraordinary result obtained by Plaintiff's counsel. Therefore, the final fee award is:

$301,650.50 (lodestar amount)        x      1.75 (multiplier)      =      $527,888.37

      **3.**     **Costs**

Plaintiff also requests to be reimbursed for $25,837.36 in costs. As the Sixth Circuit has recognized, §1988 authorizes the award of certain out-of-pocket expenses as part of a "reasonable attorney's fee":

> The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.

Northcross, 611 F.2d at 639.  Plaintiff has requested reimbursement for costs associated with transcripts, depositions, photocopying, filing fees, telephone calls, and postage.  Such expenses "are normally charged to a fee-paying client" and are therefore recoverable.  The City has made no objection to Plaintiff's counsel's costs.  The Court finds the costs submitted by Plaintiff's counsel to be reasonable and awards the full amount.

**B.     The Stay**

The City requests a stay of the judgment entered for Barnes on the jury verdict, back pay, and injunctive relief.  Barnes objects to a stay of execution of the judgment unless a bond is set pursuant to Federal Rule of Civil Procedure 62(d).  Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right.  Arban v. West Pub. Corp., 345 F.3d 390, 409 (6th Cir. 2003) (internal citations omitted).  Rule 62(d) concerns only stays granted as a matter of right and does not concern stays granted in the court's discretion.  Id.  A district court may, in its discretion, grant a stay without the posting of a bond if the moving party demonstrates that its ability to pay is so plain that the cost of bond would be a waste of money. Id. (quoting Olympia Equip. Leasing Co. v. Western Union Tel. Co., 786 F.2d 794, 796 (7th Cir. 1986)).  While this Court does not necessarily doubt the City's ability to pay, as this case has proceeded for nearly four years and the sum of money in question is quite large, the Court declines to exercise its discretion to waive the posting of a supersedeas bond. Thus, the City is entitled to a Stay of Execution on the judgment, but it must post a supersedeas bond of $320,000 plus attorney's fees, costs, and interest.  Upon posting a bond of $873,725.73, a stay of the monetary judgment and attorney's fees will be **GRANTED**.  As for the injunction, as the injunction prohibits retaliation and further discrimination, the Court has merely enjoined the City

from further violation of the law. There is no reason to stay such an injunction and thus a stay of the injunction (doc. #103) shall be **DENIED**.

**III.   CONCLUSION**

For the reasons set forth above, the City's motion to stay the Court's ruling on attorneys' fees is **DENIED**, and the Court awards Barnes' counsel $527,888.37 in attorneys' fees and $25,837.36 in costs.[3] The City's motion to stay the judgment pending appeal is **GRANTED** as to the monetary judgment and **DENIED** as to the injunctive relief.

IT IS SO ORDERED.


\_\_\_s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

---

[3] The award of fees and expenses is stayed pending appeal, with the City posting the fees and expenses as part of its bond.