RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

**FOR YOUR INFORMATION**

PHILECIA BARNES,

*Plaintiff-Appellee,*

v.

CITY OF CINCINNATI,

*Defendant-Appellant.*

Nos. 03-4110; 04-3320

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00780—Susan J. Dlott, District Judge.

Argued: December 3, 2004

Decided and Filed: March 22, 2005

Before: GILMAN and SUTTON, Circuit Judges; McKEAGUE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard Ganulin, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellant. Alphonse A. Gerhardstein, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Richard Ganulin, Augustine Giglio, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellant. Alphonse A. Gerhardstein, Jennifer L. Branch, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

DAVID W. McKEAGUE, District Judge. Phillip (now Philecia) Barnes ("Barnes") was living as a pre-operative male-to-female transsexual in 1999 when he failed the probationary period required to become a police sergeant in the Cincinnati Police Department ("CPD"). Barnes passed the sergeants exam, but failed the probationary period after he was subjected to a rigorous training program. Barnes brought suit against the City of Cincinnati in the United States District Court for the Southern District of Ohio, claiming that his failure of probation was due to illegal sex discrimination based on his failure to conform to sex stereotypes. The City argued that Barnes's failure was due to poor performance during his probationary period. The City filed pre-trial motions to dismiss and for summary judgment, both of which were denied. A jury returned a verdict in Barnes's favor in the amount of $320,511. The City filed a motion for Judgment

---

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

1

as a matter of law or for a new trial, both of which were also denied. The district court awarded Barnes $527,888 in attorneys fees and $25,837 in costs. The City appealed the verdict on thirteen separate grounds and appealed the district court's award of attorneys fees. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. FACTS

Barnes started his career with the CPD in 1981 as a police officer. Barnes passed a promotional test to become a sergeant on July 13, 1998. Barnes placed eighteenth out of 105 officers who sat for the exam. At the time of his promotion, Barnes was a male-to-female transsexual who was living as a male while on duty but often lived as a woman off duty. Barnes had a reputation throughout the police department as a homosexual, bisexual or cross-dresser. No other male sergeant was known to be gay or have a feminine appearance. The Cincinnati vice squad photographed Barnes at night.

Following his promotion, Barnes was assigned to District One for his probationary period. The purpose of a sergeant's probationary period is to allow superior officers to observe the individual to determine whether the person should remain in the position. Eighteen standard traits are used for rating a probationary sergeant, with "judgment" being the most important category. Rating scales are used to measure performance and are described throughout the CPD's procedures. The City presented evidence at trial that sergeant is the most important rank in the organization and the City makes no exceptions for anyone. Even exceptionally good police officers may not possess the skills required to be a good supervisor. Barnes admitted the transition from officer to sergeant was more difficult than he expected. Barnes also stated there was a difference between an officer's and a sergeant's responsibilities and there were areas in which he needed to improve throughout the probationary period.

One of Barnes's alleged weaknesses was lack of "command presence." According to Sergeant Shearer, command presence means that an individual "projects a certain image of confidence." Several other officers testified that Barnes lacked command presence, which, according to them, meant that he did not have the respect of his subordinates. Barnes's expert testified that employers who use subjective factors, like "command presence" to evaluate an employee are engaging in stereotyping. Nearly every evaluator who spoke to Barnes's "command presence" defined the term differently.

Barnes was assigned to Lieutenant ("Lt.") Wilger when he arrived at District One. Lt. Wilger openly spoke about the number of lesbians in the CPD and did not believe he violated any policy by speaking about the sexual orientation of female police officers while on duty. Lt. Ross testified that when Barnes arrived at District One for his probationary period, people did not take him as seriously as they should. Barnes was living off-duty as a woman, had a French manicure, had arched eyebrows and came to work with makeup or lipstick on his face on some occasions. Within a month of Barnes's promotion, Lt. Wilger reported to the head of District One, Captain ("Capt.") Demasi, that Barnes was having trouble fulfilling his duties. Lt. Wilger noted that Barnes had trouble preparing documents, exercising proper judgment in the field and completing assignments on time. After the meeting, Barnes was placed in a new training program.

The new training program required Barnes's superiors to evaluate him on a daily basis over a three month period. A special six-page form was created to evaluate Barnes. The program was designed and approved by Chief Streicher, the CPD chief. The program required seven other sergeants to rate Barnes on a daily basis. Barnes was rated in each of the standard eighteen categories on a scale of zero to twenty-five. Barnes was also told not go into the field alone, was required to wear a microphone at all times and ride in a car with a video camera during the last weeks of his probation. No other sergeants were evaluated in this manner. Barnes claimed that this experience was demeaning and it made those around him think that he was incompetent and ignorant. Barnes did admit, however, that he did not "want to speculate" on the issue of whether he was singled out based on his transsexual characteristics. Sergeant Ford testified that "[t]he purpose of the program was to scrutinize him and to document every mistake that he made so that he could be failed on probation."

Nearly a month into Barnes's evaluation program, he was stressed and "flustered" from his assignment to the program. Barnes was referred to CPD psychologist, Dr. James Daum, who recommended that Barnes receive counseling. Dr. Daum sent his report to Chief Streicher because he wanted the police division to know that Barnes needed help. Barnes claimed that many of his problems during probation were related to his elevated stress level, which would not have occurred but for his superiors singling him out in the manner they did.

Barnes received twenty-two evaluations from five different sergeants between February 21 and April 14, 1999. On April 15, Capt. Demasi recommended to Chief Streicher that Barnes fail probation because he had shown little improvement in his performance and because Barnes had violated CPD rules and procedures. Chief Streicher denied Capt. Demasi's recommendation. Barnes was instructed to choose a mentor and he chose Sergeant Hoffbauer. Sergeant Hoffbauer was Barnes's last evaluator, and evaluated Barnes between April 20 and May 18. Hoffbauer initially gave Barnes mediocre evaluations, but gave Barnes scores of zero in some categories by the middle of May.

In June, Colonel ("Col.") Twitty instructed Capt. Demasi to submit a second report recommending that Barnes fail probation. Capt. Demasi reiterated his concern over Barnes's lack of improvement and detailed several instances of dishonesty. Capt. Demasi also noted two instances where Barnes failed to comply with grooming and uniform standards, a day where Barnes committed multiple radio infractions and Barnes's failure to display appropriate "command presence." Chief Streicher relied on Col. Twitty's report and approved Barnes's failure of probation on June 22, 1999.

Chief Streicher testified at trial that Barnes had a lack of command presence and that he flunked Barnes from probation. Sergeant Ford, one of Barnes's reviewing sergeants, testified that Barnes was improving over the course of the training and that Barnes was placed in the special program to "target him for failure."

The City agrees that Col. Twitty told Barnes he did not appear to be "masculine," and that he needed to stop wearing makeup and act more masculine prior to Barnes's promotion. Col. Twitty stated the objective of such statements was to correct Barnes's "grooming deficiencies." Col. Twitty also stated that the decision to fail Barnes from probation had nothing to do with Barnes's transsexual characteristics. However, Sergeant Ford warned Barnes that he heard rumors that Barnes was going to fail probation because Barnes had not been acting masculine enough.

Barnes's expert, industrial psychologist Dr. Cranny, found that Barnes met the general standard identified for passing sergeant's probation, as his scores were above the minimum required range for passing. Barnes's expert testified that he was unable to understand how Barnes could have failed probation. Barnes's scores on the sergeant evaluation tests were higher than at least one other probationary sergeant. Barnes was the only person to be put in a Sergeant Field Training Program and the only one to fail probation between 1993 and 2000.

Barnes challenged his demotion from sergeant under Title VII and the Equal Protection Clause. The City filed a motion to dismiss and a motion for summary judgment, which were both denied by the district court. The City argued that a legitimate reason, poor performance, justified the demotion in this case. The claims were submitted to a jury, which returned a verdict in Barnes's favor. The jury awarded $150,000 in compensatory damages, $140,000 in front pay and $30,511 in back pay. The City moved for judgment as a matter of law, which was also rejected by the district court. The district court awarded Barnes $527,888 in attorneys fees and $25,837 in costs on February 27, 2004. The City filed this timely appeal alleging thirteen claims of error at trial and appealing the district court's award of attorneys fees.

## II. ANALYSIS

### A. Barnes produced sufficient evidence at trial to establish a claim for sex discrimination under Title VII.

The City states, without making it entirely clear which decision of the district court it is appealing, that Barnes failed to make out a prima facie case of sex discrimination under Title VII. In cases where an appellant made a Rule 56 motion for summary judgment that was denied, reiterated those same arguments in a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, and then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion. *K & T Enters. v. Zurich Inc., Co.*, 97 F.3d 171, 174 (6th Cir. 1996).

We review a district court's denial of a motion for judgment as a matter of law or a renewed motion for judgment as a matter of law *de novo*. *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003). Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party. *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001); *see also Williams v. Nashville Network*, 132 F.3d 1123, 1130-31 (6th Cir. 1997).

The City argues on appeal that Barnes did not plead or prove a prima facie case of sex discrimination under Title VII. The City also argues that the district court erred by not granting its motion for judgment as a matter of law and by denying its motions for summary judgment and to dismiss.[1] For the reasons stated below, we find that the City's claim that Barnes failed to plead and prove a prima facie case lacks merit and hold that the district court did not err when it denied the City judgment as a matter of law.

When reviewing the facts of a discrimination claim after there has been a full trial on the merits, we must focus on the ultimate question of discrimination rather than on whether a plaintiff made out a prima facie case. *See Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 724-26 (6th Cir. 2004)(noting that when the case proceeds to a full trial on the merits, the district court is "in a position to decide the ultimate factual issue in the case, that is, whether the defendant intentionally discriminated against the plaintiff)." Thus, "the proper inquiry following the presentation of all evidence in a Title VII case is whether plaintiff has proven its case by a preponderance [of the evidence.]" *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). Nonetheless, the evidentiary underpinnings of a plaintiff's prima facie case are not irrelevant or insulated from our examination to aid our determination whether the evidence is sufficient to support a finding of intentional discrimination. *Noble*, 391 F.3d at 725.

In order to establish a claim of sex discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

In this case, Barnes claims that the City intentionally discriminated against him because of his failure to conform to sex stereotypes. The City claims that Barnes failed to establish the first and the fourth

---

[1] As noted above, the City appeals the denial of its motions for summary judgment and to dismiss. However, once there has been a jury verdict adverse to the moving party, the denial of such motions is not properly reviewable on an appeal from the final judgment entered after trial. *See Adam v. J.B. Hunt Transp. Inc.*, 130 F.3d 219, 231 (6th Cir. 1997); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358 (9th Cir. 1987). We therefore decline to review the district court's denial of the City's motion for summary judgment and to dismiss.

elements of a prima facie case, because he was not a member of a protected class and he failed to identify a similarly situated employee who passed probation.

*Smith v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004), instructs that the City's claim that Barnes was not a member of a protected class lacks merit. In *Smith*, this court held that the district court erred in granting a motion to dismiss by holding that transsexuals, as a class, are not entitled to Title VII protections, stating:

> Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as "transsexual," is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity.

*Id.* at 575. By alleging that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind defendant's actions, Smith stated a claim for relief pursuant to Title VII's prohibition of sex discrimination. *Id.* at 573, 575. Following the holding in *Smith*, Barnes established that he was a member of a protected class by alleging discrimination against the City for his failure to conform to sex stereotypes.

Next, the City's claim that Barnes failed to establish a prima facie case because he did not identify a similarly situated employee who was not a member of Barnes's protected class who passed probation also lacks merit. Barnes need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly situated." Rather, Barnes and the employee with whom he seeks to compare himself must be similar in "all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)(noting that inflexible criteria for establishing the similarly-situated requirement would mean that "a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case (absent direct evidence of discrimination)"). An exact correlation with the comparable employee is not required. *Id.* Barnes presented evidence that he was the only police sergeant to fail probation between 1993 and 2000 and that one other sergeant, who had lower probationary scores than Barnes and was not a member of Barnes's protected class, passed probation.[2] Following the holding in *Ercegovich*, Barnes also established the fourth element of a prima facie case for sex discrimination.

The ultimate question in this case is whether the City demoted Barnes or discriminated against Barnes because of his failure to conform to sex stereotypes. It is not sufficient for a jury to merely disbelieve the reason offered by the defendant. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The jury must believe the reason offered by the plaintiff, that is, it must believe that the plaintiff was the victim of intentional discrimination. *Id.* at 519, 113 S. Ct. 2742. The Court stated that "proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination." *Id.* at 517, 113 S. Ct. 2742.

There is evidence in the record to support Barnes's claims, and therefore, the district court did not err in denying the City judgment as a matter of law, because a reasonable jury could find in favor of Barnes. The evidence Barnes produced at trial showed: (1) Barnes's performance ratings as a probationary sergeant, though low, surpassed those of at least one other probationary sergeant who passed probation; (2) No other probationary sergeant had ever failed probation; (3) Barnes's ambiguous sexuality and his practice of dressing as a woman outside of work were well-known within the CPD; (4) One of Barnes's supervisors told him he was not sufficiently masculine, and numerous supervisors and peers criticized him for lacking a

---

[2] We do not reexamine the issue of whether Barnes established a *prima facie* case or whether the district court should have dismissed the case for failure to plead a prima facie case. *Noble*, at 725. Instead, for the reasons stated above, we find that the evidence supporting the elements of a prima facie case tends to show the City unlawfully discriminated against Barnes.

quality known as "command presence;" (5) Two months into his probation, Barnes was placed in a "sergeant field training program" under the constant scrutiny of other sergeants who recorded every mistake he made; (6) The intensive oversight of the program caused Barnes significant stress; (7) The stress caused Barnes to commit mistakes in fulfilling his duties as a sergeant; (8) Barnes's dishonesty, including lying to a supervisor, stemmed from his fear of failing under the intense scrutiny of the training program; (9) No probationary sergeant before or since Barnes has been placed in a program similar to Barnes's; (10) Barnes was told by one of his superiors that he was going to fail probation for not acting masculine enough.

The jury was free to believe or disbelieve the City's explanation that Barnes was demoted because he was not qualified to fill the role of sergeant. Disbelief of a defendant's explanation is not enough to support plaintiff's jury verdict. It is clear, however, that Barnes produced evidence at trial that tended to show that the City's proffered reason for demoting Barnes was false and that the real reason for his demotion was unlawful discrimination. *See Hicks*, 509 U.S. at 519, 113 S. Ct. 2742. While we may have reached a different conclusion sitting as the finder-of-fact, it is not our role to substitute our judgment for that of the jury. *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1343 (6th Cir. 1992). Rather, we are left to examine whether Barnes produced sufficient evidence at trial to carry his burden of proof. We are convinced that he properly pled a prima facie case under *Smith*, 378 F.3d 568, and that he produced sufficient evidence at trial for a reasonable jury to find that the City intentionally discriminated against him. *Noble*, 391 F.3d 715, 724-26. We therefore conclude that the district court did not err in denying the City's motion for judgment as a matter of law.

### B. Barnes had standing to bring his claims against the City.

The City argues in its brief that Barnes did not have standing to bring a Title VII or equal protection claim against the City because he was not a member of a protected class, and because he conceded that the City had legitimate motives to fail him from probation. The City also argues that Barnes did not have standing to seek injunctive relief. The issue of standing is reviewed de novo. *Lynch v. Leis*, 382 F.3d 642, 645 (6th Cir. 2004). The standard of review for the grant of an injunction is abuse of discretion. *United States v. Miami Univ.*, 294 F.3d 797, 806 (6th Cir. 2002).

To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). For purposes of an Article III standing analysis, an injury in fact means "an invasion of a legally protected interest[.]" *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). Generally, an equal protection claim requires a plaintiff to allege that a defendant has intentionally discriminated against him or her because the individual is part of a vulnerable minority class of protected individuals. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 256, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977).

The City's argument that Barnes lacked standing because he was not a member of a protected class fails, as Barnes *is* a member of a protected class as defined in Title VII. *Smith*, 378 F.3d at 575. The City's claim that Barnes did not have standing to bring an equal protection claim based on his status as a transsexual also fails, as Barnes is a member of a protected class – whether as a man or a woman. *See id.; see also Arlington Heights*, 429 U.S. at 256, 97 S. Ct. 555. The City's final standing argument, that the district court erred in granting an injunction enjoining the City from further discrimination against Barnes is equally meritless. The district court explicitly found substantial reasons existed in favor of granting an injunction, and this Court will not overturn the district court's decision to grant an injunction, as there is no indication that the district court committed a clear error in judgment. *Miami Univ.*, 294 F.3d 806.

### C. The district court did not commit reversible error in instructing the jury.

Claims of error in jury instructions require the instructions to be reviewed as a whole in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004)(citing *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992). "This court may reverse a judgment on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000); *see also Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) (stating that "[w]e will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless").

#### 1. The district court's mixed-motive instruction was a correct statement of the law and did not confuse or mislead the jury.

The City argues that the district court erred in instructing the jury on mixed-motive. The City argued at length in its brief that the trial court erred by not requiring Barnes to prove that Chief Streicher's legitimate reasons for failing Barnes from probation were a pretext for unlawful discrimination. The City argued that this is a pretext case and under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the burden of proof shifted back to Barnes to show pretext after the City produced evidence of its allegedly legitimate motive to demote Barnes.

In this case, the district court instructed the jury as follows:

> Your verdict will be for plaintiff if you find that plaintiff demonstrated by a preponderance of the evidence that plaintiff's failure to conform to sex stereotypes was a motivating factor in defendant's decision to demote plaintiff, even if other factors . . . also motivated defendant's decision. However, if you find that defendant's treatment of plaintiff was motivated by both plaintiff's failure to conform to sex stereotypes and lawful reasons, you must decide whether plaintiff is entitled to damages. Plaintiff is entitled to damages unless defendant proves by a preponderance of the evidence that defendant would have demoted plaintiff even if plaintiff's failure to conform to sex stereotypes had played no role in the decision. Remember that plaintiff is not obligated to show that defendant's legitimate reasons played no role in the decision to demote plaintiff, nor does plaintiff need to show that the prohibited factor was the sole or principal reason or the true reason.

In order for an instruction to be proper under 42 U.S.C. § 2000e-2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)(citing 42 U.S.C. § 2000e-2(m)). In *Desert Palace*, the Court upheld a district court's decision to instruct the jury in a Title VII sex discrimination case, where the district court used the same language as the district court used in this case. *Desert Palace*, 539 U.S. at 96-97, 123 S. Ct. 2148.

A jury instruction will not automatically be erroneous simply because it does not precisely follow the legal niceties of *McDonnell Douglas*, 411 U.S. 792, 93 S. Ct. 1817 and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 591 (6th Cir. 2003); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003)(stating that criticism of an employee's performance, even if true, which is linked to stereotypes associated with a plaintiff's membership in a protected class is therefore squarely within the rubric of a mixed-motive analysis).

In this case, Barnes presented sufficient evidence for a reasonable jury to conclude that sex was a motivating factor for the City's employment decision. *See § II.A.1, supra.* A district court is not bound by

the *McDonnell Douglas* analysis when giving jury instructions. *Brown*, 338 F.3d at 591. As the district court did in this case, courts may give mixed-motive jury instructions where the plaintiff has presented enough evidence for a reasonable jury to find by a preponderance of the evidence that sex was a motivating factor in the decision to demote plaintiff. *Desert Palace*, 539 U.S. at 96-97, 123 S. Ct. 2148. The district court instructed the jury using a mixed motive instruction that tracked the language in *Desert Palace*. After reviewing the mixed-motive instruction and the jury instructions as a whole, it is clear that the mixed-motive instruction was proper under *Desert Palace*. Accordingly, we cannot say that the instructions were confusing, misleading and prejudicial and we hold that the district court did not err by giving a mixed-motive instruction to the jury.

### 2. We need not address arguments related to the district court's Equal Protection Clause jury instructions.

The City next argues the district court erred by "overbroadly instructing the jury" that the Equal Protection Clause (EPC) "prohibits discrimination against public employees on the basis of an employee's perceived sexual orientation, gender identity, transsexuality, or failure to conform to sex stereotypes." The City also argues the district court diluted Barnes's burden of proof by instructing the jury that it could "not consider whether plaintiff's own actions contributed to ...[his] injury." As the City conceded at oral argument, however, we need not reach these challenges if we uphold the Title VII verdict. As a result, we will not address these arguments

### 3. The district court did not err by instructing the jury it could find discrimination based on "sexual stereotype."

The City argues that it was improper, under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), to instruct the jury that discrimination "based on sex" includes discrimination "based on sexual stereotypes." A claim for sex discrimination under Title VII, however, can properly lie where the claim is based on "sexual stereotypes." The district court therefore did not err when it instructed the jury that it could find discrimination based on "sexual stereotypes." *See Smith*, 378 F.3d 566.

## D. The district court did not commit reversible error in its evidentiary rulings.

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004). An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, ... improperly applies the law, ... or ... employs an erroneous legal standard." *Id.; see also United States v. Kingsley*, 241 F.3d 828, 835 n.12 (6th Cir. 2001)(abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made). *United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002)(holding that a district court's decision to admit evidence under Rule 404(b) is reviewed under an abuse of discretion standard).

### 1. The district court did not err in admitting a post-probation statement and in allowing Barnes to argue about such statement.

The City argues the district court erred by denying the City's motion *in limine* as to statements allegedly made by Lt. Wilger regarding lesbians in the City's police department and the use of the word "fag." The City also argues the district court erred by allowing Barnes to make a misleading argument to the jury, based on these statements.

There is nothing in the record that gives this Court a firm conviction that a mistake has been made. The district court did not make any erroneous findings of fact, improperly apply the law or use an erroneous legal standard. *Cline*, 362 F.3d at 348. Lt. Wilger's statement could certainly be construed as probative of his intent to ensure that Barnes was demoted. Indeed, the district court ruled that the statement reflected

Lt. Wilger's intent, and was therefore admissible under Fed. R. Evid. 404(b). Without citing Fed. R. Evid. 403, the City argues in its brief that the statement was "highly prejudicial." While it is clear that the City would have preferred that the jury not hear this statement at trial, the evidence of intent was admissible under 404(b), and the City has failed to show that it was irrelevant or overly prejudicial under Fed. R. Evid. 403.[3] Therefore, the district court did not abuse its discretion in allowing the testimony.

### 2. The district court did not commit reversible error by admitting testimony regarding Sergeant Ford's statements.

The City argues the district court erred in allowing Barnes to testify regarding an alleged out of court declaration by a sergeant about alleged rumors. The City argues that the statement constituted double hearsay and it was highly prejudicial to allow Barnes to testify that "[Sergeant Ford] whispered in my ear and said that 'I have heard rumors that you are going to fail probation because you just have not been acting masculine enough.'"

This Court reviews a district court's ruling to admit evidence over a hearsay objection *de novo*. *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996)(citing *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993). We will vacate a jury's verdict based on a district court's erroneous admission of hearsay evidence only if the testimony's admission amounted to more than harmless error. *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004)(citing *Argentine v. United Steelworkers of Am.*, 287 F.3d 476, 486 (6th Cir.2002)). The improper admission of hearsay evidence is harmless error "unless it is more probable than not that the error materially affected the verdict." *United States v. Hernandez*, 227 F.3d 686, 696 (6th Cir. 2000)(quoting *United States v. Toney*, 161 F.3d 404, 410 (6th Cir. 1998)).

The City argues that the admission of this testimony unfairly prejudiced its case. Several cases from this circuit instruct our holding that the statement was not unfairly prejudicial. *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983)(holding that it was reversible error to admit hearsay evidence where there was no evidence that the employees who made hearsay declarations were acting within the scope of their employment). The City also cites *Field*, 386 F.3d 729, 736, and states that the admission of hearsay testimony was highly prejudicial and reversible error where such admission was the strongest evidence available to the defendant. However, our Circuit has also held that the possible erroneous admission of hearsay evidence was harmless error where "sufficient other evidence" supported the verdict. *United States v. Rogers*, 118 F.3d 466, 478-79 (6th Cir. 1997).

Even assuming *arguendo* that the statement was inadmissible, we believe that Barnes presented a sufficient amount of other evidence related to the City's decision to terminate Barnes for his failure to conform to sex stereotypes, such that any possible error was harmless when examining the statement in light of other evidence produced at trial. *See Field*, 386 F.3d 729. Therefore, the City is not entitled to reversal, as Sergeant Ford's statement did not materially alter the verdict because sufficient evidence otherwise supported the verdict.

### E. The district court's denial of the City's motion for a new trial

This court reviews a district court's denial of a motion for a new trial under an abuse of discretion standard. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004). A district court abuses

---

[3] Because we hold that the district court did not abuse its discretion in allowing the statement to come into evidence under 404(b) and 403, it follows that it was proper for Barnes's attorneys to use such statement when arguing to the jury. Furthermore, in *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998), we held that the failure to object raises the degree of prejudice that must be shown to get a new trial. The City failed to object to the closing argument, and has not shown a reasonable probability that the jury was improperly influenced by this argument to the jury. Therefore, the City's argument regarding Barnes's closing argument to the jury is equally unpersuasive and also rejected.

its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

A motion for a new trial will not be granted unless the moving party suffered prejudice. *Philip Morris.*, 362 F.3d at 891(citing *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987)(holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Morales v. American Honda Motor Co., Inc*, 151 F.3d 500, 514 (6th Cir. 1998).

### 1. The district court did not err in denying the City's motion for a new trial based on the weight of the evidence.

A district court's decision to deny a new trial on the basis of the weight of the evidence shall be reversed only upon finding an abuse of discretion. *United States v. Alpine Industries, Inc.*, 352 F.3d 1017, 1026 (6th Cir. 2003). "In ruling on a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).

The district court did not abuse its discretion in denying the City's motion for a new trial based on the weight of the evidence. While the City offers a plausible explanation of what the evidence showed at trial, we do not think that the jury verdict was unreasonable. The jury was free to draw inferences and interpret the evidence in favor of or against the City. The fact that the City's interpretation of the evidence is itself reasonable does not entitle it to a new trial. The district court compared the evidence presented by both sides in its order denying the City a new trial and concluded that the jury's determination was not against the manifest weight of the evidence. Therefore, we reject this argument.

### 2. The district court did not err by allowing Barnes to produce evidence and argue about the meaning of Article XII of the City Charter.

The City argues the district court erred when it refused to grant the City a new trial because the district court allowed Barnes to present evidence at trial and argue in his closing argument that Article XII of the City Charter supported Barnes's case. The City argues on appeal that it was unfairly surprised and prejudiced when the district court allowed Barnes to question witnesses and argue to the jury about the effect of Article XII.

In its order denying the City's motion for judgment or for a new trial, the district court addressed the relevancy of Article XII and any alleged unfair prejudice that the City may have suffered as a result of its admission. As used in Rule 403, unfair prejudice "does not mean the damage to the City's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). The City suffered no unfair prejudice in this case. The district court, in its Order Denying City's Motion for Judgment, pointed out that the City could hardly have been surprised by something in its own charter. The City had ample opportunity to cross-examine Dr. Cranny about Article XII or call its own expert witness to rebut Dr. Cranny's testimony. The City contends that the prejudicial effect of admitting evidence of Article XII led to a verdict in Barnes's favor. Giving due deference to the district court, we find that the district court did not abuse its discretion in allowing testimony and argument regarding Article XII, and that the City has not shown it was prejudiced. *See Cline*, 362 F.3d at 348; *see also Philip Morris.*, 362 F.3d at 891.

### 3. The district did not err in finding Chief Streicher was a final policymaker and instructing the jury on municipal liability.

In denying the City's motion for judgment as a matter of law or a new trial, the district court found that the City could be liable for Chief Streicher's actions, as he had the final authority to demote Barnes. The City has not presented any new grounds for relief on appeal. Rather, the City has reiterated the arguments it made in its motion for a new trail. The district court correctly stated and applied the law in its order denying the City a new trial. For this reason, we will only briefly address the City's argument.

The City argues that Chief Streicher was not a "final policymaker," because his decision was subject to the collective bargaining agreement and to approval from the Safety Director, City Manager and City Council. However, Chief Streicher admitted that he did not need approval from the Safety Director when firing someone. Chief Streicher also explained that, when he decided to fail Barnes from probation, the city solicitor told him that the city manager need not be involved. When Barnes attempted to appeal Chief Streicher's decision to the Cincinnati Civil Service Commission, Barnes was told that the decision was not appealable. No board or person reviewed the decision by Chief Streicher. If Chief Streicher is not the final policymaker as it pertains to demoting Barnes, it would appear no one has such authority. Therefore, because it is clear that Chief Streicher did in fact possess final authority to demote Barnes, the City can be held liable for his actions. The district court did not rely on clearly erroneous findings of fact, improperly apply the law or use an erroneous legal standard in denying the City's motion for a new trial on this ground. Therefore, we find no abuse of discretion here.

### 4. The district court did not err when it allowed Barnes to cross-examine and argue to the jury about a legal argument in a city memorandum.

The City argues that the district court erroneously concluded that Barnes's examination of Chief Streicher about legal arguments presented in the City's Motion for Summary Judgment was not unfairly prejudicial. The district court stated, in its order denying the City judgment as a matter of law and a new trial, the question presented to Chief Streicher was prejudicial to defendant, but "not unfairly so." The district court used the balancing test under Fed. R. Evid. 403 and found that the probative value of the evidence outweighed any prejudice. We agree with the district court that Chief Streicher was not forced to draw any legal conclusions, provided a thoughtful response, and the City had an opportunity to further examine Chief Streicher on redirect. The district court did not apply an erroneous legal standard or misapply the law, and the decision to deny the City's motion for a new trial was not inconsistent with substantial justice. Therefore, the City's argument is rejected.

### F. The district court did not abuse its discretion in its award of attorneys fees.

The City contends that the trial court granted Barnes an excessive award of attorneys fees. We review a district court's determination regarding the award of attorneys fees for abuse of discretion. *Paschal v. Flagstar Bank*, 297 F.3d 431, 433 (6th Cir. 2002). A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an incorrect legal standard, or applies the law incorrectly. *Id.* at 434.

The City argues on appeal that the district court abused its discretion for three reasons: (1) By awarding attorneys fees at plaintiff's attorneys' current billing rates; (2) By not reducing plaintiff's total attorneys fees for time expended on non-prevailing causes of action; (3) By applying a multiplier of 1.75 to plaintiff's total award of attorneys fees. We respectfully disagree.

First, in calculating the amount of attorneys fees in this case, the district court properly applied the "lodestar" method and multiplied the number of hours reasonably expended on the case by a reasonable hourly rate. *See West v. Hess Envt'l Servs., Inc.*, 111 F.3d 132 (6th Cir. 1997)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The district court used the "current" market rate in calculating plaintiff's attorneys' reasonable hourly rate because the litigation had been ongoing for

nearly six years. In *Missouri v. Jenkins*, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989), the Court noted that compensation is often received several years after services were rendered in complex civil rights litigation and held that an adjustment for delay in payment by the application of current, rather than "historical," hourly rates is within the contemplation of the attorneys fees statute.

Second, successful and unsuccessful claims are deemed related when they "involve a common core of facts" are "based on related legal theories" or when counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended." *Hensley*, 461 U.S. at 433, 103 S. Ct. 1933. The district court found that Barnes's attorneys fees should not be reduced in this case based on Barnes litigating unsuccessful claims, because the claims were not separable.

Third, multipliers, or fee enhancements to the Lodestar calculation, are permissible in some cases of "exceptional success." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The key issue is whether an adjustment is necessary to the determination of a reasonable fee. *Id.* The Fifth Circuit, in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), enunciated twelve factors that trial courts may consider in calculating reasonable attorney fee awards. The Supreme Court has determined that "Johnson's 'list of 12' ... provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees...." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard*, 489 U.S. at 91 n. 5, 109 S. Ct. 939. The district court should "provide a concise but clear explanation of its reasons" for its conclusions regarding an attorney fee award. *Paschal v. Flagstar Bank*, 297 F.3d 431, 433 (6th Cir. 2002)(citing *Hensley*, 461 U.S. at 437, 103 S. Ct. 1933).

The district court granted a multiplier of 1.75 to the total fee award. The district court provided a clear and concise explanation for its decision, reasoning that a multiplier was appropriate because of the "novelty and difficulty" of this question and because of the "immense skill requisite to conducting this case properly." The court found the result achieved was extraordinary and the case was highly controversial, based on the affidavits of two Cincinnati attorneys who stated that few lawyers locally or nationally would take such a case.

The district court did not err in its award of attorneys fees. In this case, the district court's decision to award attorneys fees at current market rates and its finding that the time spent litigating Barnes's unsuccessful claims were not based on erroneous findings of fact, did not misapply the law or rely on erroneous legal conclusions. Similarly, the district court's finding that reasonable compensation for the result obtained by Barnes's attorneys could not be obtained without applying a multiplier of 1.75 was not an abuse of discretion. *See Guam Soc. Of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996)(200 percent multiplier upheld because of the undesirability of the case and the exceptional nature of the case); *McKenzie v. Kennickell*, 875 F.2d 330, 338-39 (D.C. Cir. 1989)(awarding twenty five percent enhancement for exceptional results and where counsel "remained active in the litigation over a period of fifteen years"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001)(awarding 150 percent multiplier for solo practitioner who achieved exceptional results by taking an unpopular case others turned down and bringing to light a previously unrecognized cause of action); *Quinn v. Nassau County Police Dept.*, 75 F. Sup. 2d 74 (E.D. N.Y. 1999)(awarding ten percent multiplier in employment discrimination case due to ground breaking nature of case); *Hollowell v. Gravett*, 723 F. Supp. 107, 110 (E.D. Ark.

1989)(awarding seventy five percent quality enhancement where plaintiff's counsel prepared the case thoroughly and provided superb representation "under the most adverse circumstances."); *Shakman v. Democratic Org.*, 677 F. Supp. 933, 945 (N.D. Ill. 1987)(awarding a one third quality enhancement in a class action where the court noted the case had great significance and plaintiffs' counsel showed "imagination and creativity"). While use of such a multiplier nearly doubled the award of attorneys fees, the district court enjoys wide discretion in awarding attorneys fees.[4] In short, we are not convinced that the fees granted by the district court in this case were unreasonable and we find no abuse of discretion here.

## IV. CONCLUSION

For all the foregoing reasons, we hereby **AFFIRM** the judgment of the district court.

---

[4] Our holding acknowledges the wide discretion a district court enjoys in determining the amount of "reasonable" attorneys fees to award a successful Title VII litigant. We hold today that the district court did not abuse its discretion in awarding a multiplier of 1.75 to Barnes's attorneys in this case. However, district courts should recognize that this figure, (1.75), is near the upper end of what we consider "reasonable." Therefore, district courts should not view the decision to uphold the multiplier in this case as an explicit or implicit approval of this large or larger multipliers across the board, or assume that a multiplier, like the one used in this case, could never constitute an abuse of discretion.