IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PHILECIA BARNES, formerly known as PHILLIP W. BARNES, | Case No. 1:00-cv-780 |
| | District Judge Susan J. Dlott |
| Plaintiff, | |
| | ORDER GRANTING IN PART |
| v. | PLAINTIFF'S MOTION FOR |
| | SUPPLEMENTAL ATTORNEY'S |
| CITY OF CINCINNATI, | FEES AND EXPENSES; |
| | AWARDING ALL FEES AND |
| Defendant. | EXPENSES; AND CLOSING CASE |

This matter comes before the Court on Plaintiff Philecia Barnes' Motion for Final Supplemental Fees and Expenses (doc. #134). For the reasons below, the Court **GRANTS IN PART** Barnes' Motion (doc. #134), **AWARDS** $90,344 in supplemental attorney's fees and $2,539.55 in supplemental expenses, and **ORDERS** payment of these amounts with interest. The Court also *sua sponte* **LIFTS** its stay of judgment on Barnes' original award of $527,888.37 in fees and $25,837.36 in expenses (docs. ##s 123, 124); **ORDERS** payment of these amounts with interest; and **CLOSES** the case.

I.    BACKGROUND

  A.    Litigation History and Original Fee Award

Barnes sued the City of Cincinnati in 2000, contending that the Cincinnati Police Department subjected her[1] to sexual discrimination that led her to fail a 1999 probationary period

---

[1] At the time, Barnes was a pre-operative male-to-female transsexual. See Barnes v. City of Cincinnati, 401 F.3d 729, 733 (6th Cir. 2005).

1

essential for promotion to the position of sergeant.  See, e.g, Barnes v. City of Cincinnati, 402 F.3d 729, 733-35 (6th Cir. 2005.)  In February 2003, a jury awarded Barnes $320,511 in compensatory damages and front pay.  Barnes, 401 F.3d at 733; see also docs.##s 80, 104.  The Court granted Barnes $527,888.37 in fees and $25,837.36 in expenses on the strength of the verdict, but stayed its judgment pending the City's appeal on various grounds, including the propriety of the fee award.  (Docs. ##s 123, 124.)  In March 2005, the Sixth Circuit affirmed both the jury verdict for Barnes and the Court's fee award.  See generally Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005).  The City then appealed to the United States Supreme Court, which denied certiorari in November 2005.  See City of Cincinnati v. Barnes, 126 S. Ct. 624 (2005).

      B.       **Current (Supplemental) Fee Request**

Barnes now seeks a supplemental award for fees and costs her counsel has expended since August 12, 2003, the date of her original fee petition, on defensive briefing before the Sixth Circuit and Supreme Court.  (Doc. #134 at 1-2; see also doc. #134-2 (billing records).)  Barnes, applying the same hourly fee rates and 1.75 multiplier used in the Court's original award, supra, submits that she is entitled to a supplemental $90,773 in fees and $2,539.55 in costs.  (Id. at 3; see also doc. #134-2.)  Barnes also asks the Court to "clarify" that post-judgment interest on the original fee award accrues from the Court's August 6, 2003 entry of judgment on her verdict,[2] even though the Court did not grant her original fee motion until February 27, 2004.  (Doc. #134 at 3; see also docs. ##s 104, 124.)

---

[2] Barnes asserts that interest on her jury damages award should also accrue from the August 6, 2003 entry of judgment, a point the City does not dispute.  (Doc. #134 at 3; doc. #137.)

The City responds that a 1.75 multiplier is unreasonably high as applied to "supplemental fees incurred *after* a successful jury verdict," particularly absent evidence that the appeal involved any "particular novelty or skill."  (Doc. #137 at 2 (emphasis in original.))  The City also questions the inclusion, in the billing records Barnes' counsel submitted in support of her motion, of a 0.7-hour "[t]elephone conference with tax attorney re: options on verdict and fee." (Doc. #137 at 1, 3; see also 7/26/2005 entry to doc. #134-2 (billing records) at 7.))  With respect to post-judgment interest, the City concedes that interest on the Court's original fee award should accrue from the Court's entry of judgment on Barnes' verdict.  (Doc. #137 at 2; see also Associated Gen. Contractors of Ohio v. Drabik, 250 F.3d 482, 495 (2001).)  Unfortunately, the City–like Barnes–does not discuss whether or how post-judgment interest should be applied to the *supplemental* fee award Barnes seeks here.

## II.     ANALYSIS

Barnes moves for a supplemental award of fees and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), which authorize awards of "reasonable" fees and costs to prevailing parties in civil rights actions brought under 42 U.S.C. § 1983 and Title VII.  (Doc. #123 at 5.)  Because the general standards governing such awards are detailed in this Court's original fee order and the Sixth Circuit's opinion affirming that order,[3] the Court declines to restate them here and proceeds directly to disputed issues.

### A.     **Supplemental Fees for Tax Consulting**

The first issue is whether Barnes is entitled to reimbursement for what is described in her

---

[3] See Barnes, 401 F.3d at 745-47, and doc. #123.

counsel's billing records as a 0.7-hour telephone conference between counsel Alphonse A. Gerhardstein and a "tax attorney re: verdict and fee." (Doc. #134-2 at 7.) The City argues that while Barnes may well have requested this consultation, the time entry must be deducted because tax treatment issues are too "far removed" from the merits of the City's appeal to fall within the ambit of Barnes' supplemental fee award. (Doc. #137 at 1, 3.) While it is conceivable that this conference involved issues relevant to the defense of Barnes' verdict on appeal, the nexus is not evident from the face of counsel's billing records, and Barnes has not filed a timely reply on this (or any other) issue.[4] Because Barnes has not satisfied her "burden of documenting [her] entitlement" to a fee award for this entry, the Court deducts it from her lodestar. Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999) (internal citation omitted); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (where documentation is inadequate, court may reduce award accordingly). The correction reduces Barnes' lodestar by $245,[5] from $51,870 (see doc. #134 at 2) to $51,625.

    **B.**    **Fee Multiplier**

The next and far more consequential issue is whether Barnes is entitled to her requested lodestar enhancement, or multiplier, of 1.75. (See doc. #134 at 2.) This Court applied, and the Sixth Circuit affirmed, a 1.75 multiplier in the original fee award in this case. (Barnes, 401 F.3d at 745-47; doc. #123 at 10-12.) The City notes that the Sixth Circuit described this 1.75 figure as "near the upper end of what we consider 'reasonable'." Barnes, 401 F.3d at 746 n.4. The City

---

[4] The City filed its opposition to Barnes' fee motion on December 7, 2005. Pursuant to Local Rule 7.2(a)(1), Barnes' reply was due by December 19, 2005. No reply was filed.

[5] Represents 0.7 hours at counsel Gerhardstein's $350 hourly rate.

submits that while 1.75 may be within the "reasonable" range for purposes of Barnes' counsel's efforts to obtain a favorable jury verdict and damage award, it is excessive for purposes of their efforts to defend that successful verdict on appeal. (Doc. #137 at 2-3.) Barnes states only that the multiplier remains appropriate for the same reasons set forth in her original fee petition (doc. #94), which she incorporates by reference. (Doc. #134 at 1-2.)

Lodestar multipliers are not applied as a matter of course, but courts may grant them in cases of "exceptional success." Barnes, 401 F.3d at 745 (citing Blum v. Stenson, 465 U.S. 886 (1984)). As the Court found in its original fee order, this is an "exceptional" case. (Doc. #123 at 10-12.) Barnes' transsexual status put her sex discrimination claims in a unique factual posture, one that challenged her counsel to fashion novel, creative, and difficult theories of relief under Title VII of the Civil Rights Act and the Equal Protection clause of the federal Constitution. (Id. at 11-12.) The Sixth Circuit's affirmance specifically notes that, according to testimony before this Court, "few lawyers locally or nationally" would have readily taken on a case so "highly controversial." Barnes, 401 F.3d at 746; doc. #123 at 11-12.)

The City now suggests that while Barnes' case may indeed have been "exceptional" at the trial level, the successful jury verdict lent Barnes' counsel a measure of security on appeal. That is true in the general sense that the appellate posture foreclosed further fact-finding and insulated some questions of law from *de novo* review. However, much the same could be said of *any* civil rights action in which a prevailing plaintiff's jury verdict is appealed–and a party *must* prevail at the trial level to qualify for a fee award in the first instance. The Court must still confront the more specific question raised here: namely, whether a multiplier already upheld as applied to the costs of obtaining a successful trial verdict in an "exceptional" civil rights case

should also apply–without adjustment–to the costs of defending that verdict on appeal.

The Court returns to the twelve factors courts may consider in setting multipliers:[6]

> (1) the time and labor required; (2) the novelty and difficulty of questions presented; (3) the skill needed to perform legal service properly; (4) the preclusion of employment by attorney due to acceptance of case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) undesirability of case; (11) nature and length of professional relationship with client; and (12) awards in similar cases.

Barnes, 401 F.3d at 745 (citing Johnson v. Georgia Highway, 488 F.2d 714, 717-19 (5th Cir. 1974)); see also doc. #123 at 10-12. The City stresses the second and tenth Johnson factors, reasoning that a case already won at trial is more "desirable" than a new, untested case and presents less "novel" and "difficult" questions. (Doc. #137 at 2-3.) The desirability argument is not particularly persuasive, because–as noted above–it would seem to apply with equal force to *any* verdict for a civil rights plaintiff that an opposing party chooses to appeal. The novelty argument is unpersuasive for the same reason, at least in the context of Barnes' case. The City's appeal probed, among other issues, the legal merits of Barnes' rather unusual and intricate *prima facie* sex discrimination theories under Title VII. See generally Barnes, 401 F.3d at 735-38.[7]

---

[6] The Court acknowledges in passing that the Supreme Court and Sixth Circuit have both described the Johnson factors as largely "subsumed within" the lodestar, and suggested that most factors should carry little or no independent weight in determining whether to apply enhancements in most cases. See, e.g., Geier v. Sundquist, 372 F.3d 784, 792-93 (6th Cir. 2004) (citing in part Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Because the Sixth Circuit cited and applied the factors in discussing *Barnes'* multiplier last year, however, the Court concludes it may continue to consider them for purposes of fee awards in this particular case.

[7] The Sixth Circuit's opinion does not touch on every arguable "novel" merits issue in Barnes' case, excluding–most significantly–the issues raised by Barnes' alternative discrimination claim under the Equal Protection clause. However, that is because the Circuit concluded Barnes had made a strong enough showing on the merits of her Title VII claims that

While it is true that Barnes' counsel could rely on the trial record, and were thus spared the novelty and difficulty of re-establishing Barnes' factual case, that would again be true of any appeal.

Because the Johnson factors do not appear to resolve the question of whether Barnes' multiplier should be reduced for purposes of attorney's fees incurred on appeal rather than at the trial level, the Court considers the general policies underlying fee awards. In enacting 42 U.S.C. § 1988, one of the statutes under which Barnes seeks fees, "Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned." Hensley, 461 U.S. at 444 (Brennan, J., dissenting in part and concurring in part). In lieu of "provid[ing] public funds or government attorneys for litigating civil rights claims," Congress "continu[ed] to rely on the private bar by making defendants bear the full burden of paying for enforcement of their civil rights obligations." Id. at 445-46. However, the lodestar *itself* captures this enforcement burden by compensating civil rights attorneys at rates reflecting the "full value that their efforts would receive on the open market in non-civil rights cases . . . ." Id. at 446. There must be some additional justification, therefore, for lodestar multipliers.

The Supreme Court has indicated that multipliers are not ordinarily necessary to compensate for the risk of loss associated with novel or difficult issues or the prospect of protracted litigation in a case, because these factors should be reflected–at least in theory–in the total hours and hourly rates multiplied to produce the lodestar. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 726-27 (1987). Rather, multipliers–at

---

the verdict could stand on those grounds alone. See Barnes, 401 F.3d at 741.

least where predicated on risk–are "reserved for exceptional cases where the need and justification for such enhancement are apparent and are supported by evidence in the record and specific findings by the Courts." Id. at 728 (citing Blum v. Stenson, 465 U.S. 886, 898-901 (1984)).  In this context, the Supreme Court has suggested that fees spent to defend an initial, favorable judgment in a case–even one predicated on admittedly "new and novel issues"–may not merit the same multipliers as fees spent to obtain the initial judgment. See id. at 729-30. However, the Pennsylvania case before the Supreme Court concerned fees incurred in defending a consent decree before the same district court that had entered it. Id.  The defense of a district court's resolution of novel legal questions against *de novo* review by a Court of Appeals, and a potential grant of certiorari, appears a far riskier proposition.  Pennsylvania also did not present, and the Court expressly set aside, the question of how an attorney's support of a cause, plaintiff, or position potentially "unpopular in the community" – an issue clearly relevant to Barnes' case – should influence the application of a multiplier. Id. at 715-16; Barnes, 401 F.3d at 746.

On a broader level, it seems more consistent with the Congressional policies underlying fee-shifting to have any multiplier applied to fees incurred through trial also extend to any fees incurred while defending a trial verdict on appeal.  As discussed above, statutes like 42 U.S.C. § 1988 rest on the premise that rewarding attorneys with market-rate lodestars–and, by extension, enhancing those lodestars in "exceptional cases" presenting particularly novel or complex issues–is necessary to achieve a "socially desirable" level of civil rights victories.  If so, it makes little sense to offer civil rights attorneys enhanced incentives for favorably resolving novel or complex issues at the trial court level, only to reduce or eliminate the enhancements once attorneys are called on to defend (and thus preserve) those favorable outcomes on appeal.

The Court concludes that a 1.75 multiplier is "reasonable" as applied to the costs of defending the <u>Barnes</u> appeal, and orders City to pay $90,344[8] in supplemental attorneys' fees.

### C.    Supplemental Award of Expenses

Barnes also seeks an award of $2,539.55 for supplemental administrative expenses, other than fees, incurred by Barnes' counsel in the Sixth Circuit and certiorari proceedings.  (Doc. #134 at 2; <u>see also</u> doc. #134-2 at 9.)  The Court orders this amount, which is adequately documented by Barnes' counsel and not contested by the City (doc. #137), paid in full.

### D.    Post-Judgment Interest (Original and Supplemental Awards)

The parties agree that post-judgment interest on this Court's original award of fees and expenses, payment of which was stayed pending appeal (docs ##s 123, 124), should accrue as of August 6, 2003.  <u>See</u> supra Part I.B.  The parties have not addressed how post-judgment interest should apply to Plaintiffs' supplemental fees and expenses on appeal, and the case law is not particularly instructive.  Because Plaintiffs' favorable trial verdict was affirmed on appeal, and the Supreme Court has denied certiorari, August 6, 2003 arguably remains–in retrospect–the "judgment which unconditionally entitl[ed] the prevailing party to reasonable attorney's fees." <u>See</u> Drabik, 250 F.3d at 495.  However, because these supplemental fees and expenses did not even begin *accruing* until August 12, 2003, <u>see</u> doc. # 134 at 1-2, it appears inappropriate (or, at the very least, over-compensatory) to have interest run from August 6, 2003.  The Court therefore decides that post-judgment interest on Plaintiffs' supplemental award of fees and

---

[8] Corrected lodestar of $51,625 times 1.75 multiplier.

expenses should accrue as of November 7, 2005, the date of the Supreme Court's order denying certiorari in this case. (See doc. #136.)

### III.   CONCLUSION

In light of the above, the Court **GRANTS IN PART** Barnes' Motion (doc. #134) and **ORDERS** the City to pay $90,344 in supplemental attorney's fees and $2,539.55 in expenses, plus post-judgment interest as of November 7, 2005. Because all appeals are now exhausted, the Court also *sua sponte* **LIFTS** its stay of judgment on Barnes' original fee order (docs. # 123, 124) and **ORDERS** the City to pay the $527,888.37 in attorneys' fees and $25,837.36 in expenses awarded in that order, plus post-judgment interest as of August 6, 2003.[9]

This order disposes of the remaining claims in this case, which is hereby **CLOSED**.

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

[9] Post-judgment interest on Barnes' damage award also runs from August 6, 2003.